[No. C023065. Third Dist. July 20, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
OLGA CLAUDIA RIVERA, Defendant and Appellant.

**COUNSEL**

J. David Nick, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, J. Robert Jibson and Regina Silva, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SCOTLAND, J.**—Defendant Olga Claudia Rivera pled guilty to driving under the influence of alcohol (DUI) and admitted having three prior DUI convictions. (Veh. Code, § 23152, subd. (a).) She was placed on probation upon various conditions, including she serve 210 days in the county jail and pay a jail booking fee of $135 and a jail classification fee of $33. (Gov. Code, § 29550.2, subd. (a); further section references are to the Government Code unless specified otherwise.)

On appeal, defendant claims that imposition of the fees authorized by section 29550.2 violated the prohibition against ex post facto laws because she committed the DUI violation before section 29550.2 was enacted. The contention fails.

As we shall explain, section 29550.2 was enacted not as a punitive measure, but to help address the state's fiscal crisis by allowing a county to recover costs incurred in booking or otherwise processing an arrested person

who thereafter is convicted. The fees are limited to actual administrative costs and are assessed against all convicted offenders who have the ability to pay, without regard to the nature or severity of their respective offenses. Because the fees are not punitive in purpose or effect, they do not run afoul of the prohibition against ex post facto laws. Accordingly, we shall affirm the judgment.

## DISCUSSION

Section 29550.2, subdivision (a) provides in pertinent part: "Any person booked into a county jail pursuant to any arrest by any governmental entity not specified in Section 29550 or 29550.1 is subject to a criminal justice administration fee for administration costs incurred in conjunction with the arresting and booking if the person is convicted of any criminal offense related to the arrest and booking. The fee which the county is entitled to recover pursuant to this subdivision shall not exceed the actual administrative costs . . . incurred in booking or otherwise processing arrested persons. If the person has the ability to pay, a judgment of conviction shall contain an order for payment of the amount of the criminal justice administration fee by the convicted person, and execution shall be issued on the order in the same manner as a judgment in a civil action, but the order shall not be enforceable by contempt. The court shall, as a condition of probation, order the convicted person to reimburse the county for the criminal justice administration fee." (Added by Stats. 1992, ch. 696, § 20, p. 3007; amended by Stats. 1997, ch. 47, § 2.)

■■■ Pointing out she was arrested and booked in 1990, before section 29550.2 was enacted, defendant argues that requiring her to pay criminal justice administration fees for the costs of her booking and jail processing violates the ex post facto clauses of the federal Constitution (U.S. Const., art. I, § 10, cl. 1) and the California Constitution (Cal. Const., art. I, § 9).

In defendant's view, the fees may not be imposed because they " ' "make[] more burdensome the punishment for a crime, after its commission." ' " (*People* v. *McVickers* (1992) 4 Cal.4th 81, 84 [13 Cal.Rptr.2d 850, 840 P.2d 955].) She compares a criminal justice administration fee to a restitution fine, which constitutes punishment for purposes of the prohibition against ex post facto laws. (*People* v. *Zito* (1992) 8 Cal.App.4th 736, 741 [10 Cal.Rptr.2d 491]; accord, *People* v. *Saelee* (1995) 35 Cal.App.4th 27, 30-31 [40 Cal.Rptr.2d 790].)

As we shall explain, the analogy is inapt and the claim of error fails.

■■■ The ex post facto clause of the United States Constitution applies "only to statutes imposing penalties," i.e., punishment. (*Trop* v. *Dulles*

(1958) 356 U.S. 86, 95-96 [78 S.Ct. 590, 595-596, 2 L.Ed. 2d 630, 639-640].) Its counterpart in the California Constitution is analyzed identically. (*People* v. *McVickers, supra,* 4 Cal.4th at p. 84.) The determination of whether a statute is penal in nature is based in part upon the purpose of the statute. (*Trop* v. *Dulles, supra,* at p. 96 [78 S.Ct. at pp. 595-596, 2 L.Ed.2d at pp. 639-640].) "If the statute imposes a disability for the purposes of punishment—that is, to reprimand the wrongdoer, to deter others, etc., it has been considered penal. But a statute has been considered nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose." (*Ibid.,* fns. omitted.)

█ In assessing whether a statute imposes punishment, we inquire (1) whether the Legislature intended the sanction to be punitive and, if not, (2) whether the sanction is so punitive in effect as to prevent the court from legitimately viewing it as regulatory or civil in nature, despite the Legislature's intent. (*Russell* v. *Gregoire* (9th Cir. 1997) 124 F.3d 1079, 1086-1087, citing *United States* v. *Ursery* (1996) 518 U.S. 267, 288-289 [116 S.Ct. 2135, 2147-2148, 135 L.Ed.2d 549, 568] and *Kansas* v. *Hendricks* (1997) 521 U.S. 346, 360-361 [117 S.Ct. 2072, 2081-2082, 138 L.Ed.2d 501, 514-515].)[1]

---

[1]Citing certain language in *Lynce* v. *Mathis* (1997) 519 U.S. 433 [117 S.Ct. 891, 137 L.Ed.2d 63] (hereafter *Lynce*), defendant asserts that the legislative intent in enacting a statute, i.e., the purpose of the statute, is irrelevant to the determination of whether the statute is punitive. She is wrong.

*Lynce* held that Florida's enactment of a statute canceling early release credits which a prior statute had awarded to inmates whenever the prison population exceeded specified levels violated the prohibition against ex post facto laws. Responding to arguments about the purpose of the "overcrowding" credits, the Supreme Court stated that the parties "place undue emphasis on the legislature's subjective intent in granting the credits, rather than on the consequences of their revocation." (519 U.S. at p. 442 [117 S.Ct. at p. 896, 137 L.Ed.2d at p. 73].) The relevant inquiry was not the motivation underlying the original statute, but whether cancellation of the credits occasioned by the new statute had the effect of lengthening the period of incarceration. (*Ibid.*)

Defendant misinterprets this language. *Lynce* simply pointed out that the motivation in enacting the *original statute* granting credits was irrelevant to the question of whether the *subsequent statute* revoking the credits violated the ex post facto clause. The fact that the award of credits was motivated by a desire to avoid prison overcrowding was not relevant to whether revocation of the credits was punitive.

"*Lynce* teaches only that legislative intent is not generally relevant to whether the amount of a given punishment has increased. *Lynce* did not question whether the prison sentence was punishment, but only whether a decrease in early release credits increased that punishment. In contrast, intent is very important in determining whether a particular sanction is punishment in the first place. These are distinct questions, and legislative intent is crucial in answering the latter, but not necessarily so in answering the former." (*Russell* v. *Gregoire, supra,* 124 F.3d at p. 1086.)

The United States Supreme Court recently reiterated the primacy of legislative intent in assessing ex post facto claims. (See *Kansas* v. *Hendricks, supra,* 521 U.S. at pp. 360-361 [117 S.Ct. at pp. 2081-2082, 138 L.Ed.2d at pp. 514-515].)

"The first part of the test ('intent') looks solely to the declared purpose of the legislature as well as the structure and design of the statute. [Citations.] The second part of the test ('effects') requires the party challenging the statute to provide 'the clearest proof' that the statutory scheme is so punitive either in purpose or effect as to negate the State's nonpunitive intent. [Citations.]" (*Russell* v. *Gregoire, supra*, 124 F.3d at p. 1087.)

The following factors are relevant in assessing the effects of the statute: "Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned[.]" (*Kennedy* v. *Mendoza-Martinez* (1963) 372 U.S. 144, 168-169 [83 S.Ct. 554, 567-568, 9 L.Ed.2d 644, 661], fns. omitted; *Russell* v. *Gregoire, supra*, 124 F.3d at p. 1087; see also *Kansas* v. *Hendricks, supra*, 521 U.S. at pp. 362-363 [117 S.Ct. at pp. 2082-2083, 138 L.Ed.2d at pp. 515-516]; *United States* v. *Ursery, supra*, 518 U.S. at pp. 290-293 [116 S.Ct. at pp. 2148-2150, 135 L.Ed.2d at pp. 570-571].)

Defendant's attempt to analogize the criminal justice administration fees to a restitution fine is not persuasive. ▮ "[A]side from making the victim whole, restitution serves valid punitive, deterrent, and rehabilitative objectives by requiring the defendant to return his ill-gotten gains and helping him appreciate the harm done to the victim." (*People* v. *Cookson* (1991) 54 Cal.3d 1091, 1097 [2 Cal.Rptr.2d 176, 820 P.2d 278].) That the Legislature intended restitution fines to be punitive is evidenced by the language used in former section 13967, which stated that restitution may be imposed "in addition to any other penalty."

No such language expressing a punitive intent is contained in section 29550.2. Rather, the readily apparent intent of the Legislature was that the criminal justice administration fees were added not as a punitive measure, but in order to accomplish another legitimate governmental purpose. Section 29550.2 was enacted in 1992 as part of a bill addressing California's then-existing fiscal crisis. (Stats. 1992, ch. 696, § 20, pp. 3007-3008.) To that end, the Legislature added numerous provisions to various codes allowing for the collection of fees by government agencies to help offset the cost of services provided. (Stats. 1992, ch. 696, § 4 et seq., p. 3003 et seq.)

As to the effect of the fees, their amount is not so excessive in relation to the stated purpose so as to prevent us from legitimately viewing them as

nonpunitive in nature. Section 29550.2 specifically provides that the fees shall not exceed the actual administrative costs incurred in booking or otherwise processing those who are arrested and convicted. In effect, the statute imposes an administrative "user" fee. Defendant has presented no evidence that such fees historically have been regarded as punishment. (See *Kennedy* v. *Mendoza-Martinez, supra*, 372 U.S. at p. 168 [83 S.Ct. at pp. 5567-568, 9 L.Ed.2d at p. 661]; *Russell* v. *Gregoire, supra*, 124 F.3d at p. 1087.)

The fact that the fees come into play only upon a criminal conviction is a factor which can be viewed as punitive. However, an alternative view is that this simply reflects a legislative determination that those who are not convicted are involuntary users of the jail system who should not have to pay for services for which they did not choose to avail themselves; whereas those who are convicted in effect "chose" to use the jail services when they chose to commit an unlawful act.

Although the criminal justice administration fees involve an "affirmative disability" (*Kennedy* v. *Mendoza-Martinez, supra*, 372 U.S. at p. 168 [68 S.Ct. at pp. 567-568, 9 L.Ed.2d at p. 661]), section 29550.2 does not promote the traditional aims of punishment—retribution and deterrence—in the same way a restitution fine does. For example, requiring a convicted criminal to return ill-gotten gains to the victim serves as retribution and a deterrent by removing any profit from the crime. Requiring a convicted criminal to pay booking costs incurred as the result of the person's arrest does not have the same effect. Criminal justice administration fees are imposed not as retribution for what the convicted criminal has done to a victim and/or to society, but for his or her use of jail services as the result of criminal behavior.

 Because the Legislature did not have a punitive intent in enacting section 29550.2 and the effect of the statute is not penal in character, retroactive application of the section does not violate the prohibition against ex post facto laws.

Our conclusion is consistent with the decision in *Taylor* v. *State of Rhode Island* (1st Cir. 1996) 101 F.3d 780 (hereafter *Taylor*), which held that the retroactive imposition of a modest, cost-based fee intended to reimburse the Rhode Island Department of Corrections for costs of probation supervision was not punitive and did not violate the ex post facto clause. (*Id.*, at pp. 783-784, cert. den. __ U.S. __ [117 S.Ct. 2480, 138 L.Ed.2d 989].) The court reasoned that the statute requiring probationers to pay a $15 monthly fee for the costs of probation supervision was located among other civil statutes and

imposed a civil charge designed to reimburse the Department of Corrections for costs directly associated with providing probation supervision. Waivers were available for offenders unable to pay. The same monthly fee was assessed against all offenders without regard to the nature or severity of their respective offenses. "[S]o modest a cost-based supervisory fee reasonably cannot be deemed punitive in purpose, especially since any conceivable retributive or deterrent effect could only be inconsequential." (101 F.3d at pp. 783-784.)

Section 29550.2, like the statute in *Taylor*, is located among other civil statutes and provides that execution shall be issued on the order of reimbursement "in the same manner as a judgment in a civil action." (§ 29550.2, subd. (a).) It was enacted not as a punitive measure, but to address the state's fiscal crisis. The fees are limited to the actual administrative costs and are assessed against all offenders who have the ability to pay the fee, without regard to the nature or severity of their respective offenses.

As the fees are not punitive in purpose or effect, their retroactive application does not run afoul of the prohibition against ex post facto laws.

### DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Nicholson, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 18, 1998.