845 So.2d 880 (2003)
Ollie James GOAD, Petitioner,
v.
FLORIDA DEPARTMENT OF CORRECTIONS, Respondent.
No. SC00-785.
Supreme Court of Florida.
February 27, 2003.
Rehearing Denied May 5, 2003.
*881 Peter M. Siegel and Randall C. Berg, Jr. of Florida Justice Institute, Inc., Miami, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, and Charlie McCoy, Assistant Attorney General, Tallahassee, FL, for Respondent.
QUINCE, J.
We have for review the decision of the First District Court of Appeal in State Department of Corrections v. Goad, 754 So.2d 95 (Fla. 1st DCA 2000), which certified conflict with Gary v. State, 669 So.2d 1087 (Fla. 4th DCA 1996), and Alberts v. State, 711 So.2d 635 (Fla. 2d DCA 1998). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we approve the First District's decision and hold that sections 960.293 and 960.297, Florida Statutes (Supp.1994), do not violate the constitutional prohibition against ex post facto laws, nor do sections 960.293 and 960.297 violate the right to substantive due process.
The relevant facts are set forth in the First District's opinion:
Ollie James Goad has been an inmate in the custody of the Department of Corrections since February 1991. Mr. Goad initiated a civil action against the *882 Department in 1995, for injuries he sustained when he was attacked by another inmate. In response to this claim, the Department filed a motion for a summary judgment and a counterclaim under sections 960.293 and 960.297, Florida Statutes (Supp.1994) to recover the costs of Mr. Goad's incarceration. Section 960.293 provides that a defendant who is incarcerated for an offense that is neither a capital offense nor a life felony offense is liable to the state in the amount of $50 per day for the costs of incarceration. By the terms of section 960.297, the state may recover these costs for the portion of the offender's remaining sentence after July 1, 1994, the effective date of the law.
The trial court granted the Department's motion for summary judgment on the cause of action asserted in the complaint, and Mr. Goad then filed a motion for judgment on the pleadings as to the counterclaim. He argued that the application of section 960.297 would violate the ex post facto clauses of the state and federal constitutions, because the statute was not in effect at the time he committed the criminal offenses resulting in his incarceration. The trial court agreed and held that section 960.297 could not be applied retroactively.
754 So.2d at 96-97. The First District reversed the trial court's decision, concluding that sections 960.293 and 960.297 "afford civil remedies that are not the equivalent of criminal punishment," and therefore do not violate the ex post facto clauses of the state and federal constitutions. Id. at 100.
Goad now raises two issues for review: first, whether sections 960.293 and 960.297 of the Florida Civil Restitution Lien and Crime Victims' Remedy Act (the Act)[1] violate the constitutional prohibition against ex post facto laws; and second, whether these same sections violate the right to substantive due process.[2]

EX POST FACTO CLAIM
Goad claims the Act violates the constitutional ban on ex post facto laws. A law violates the ex post facto clauses of the United States and Florida Constitutions when it increases the punishment for a criminal offense after the crime has been committed. See U.S. Const. art. 1, § 9, cl. 3; U.S. Const. art. 1, § 10, cl. 1; art. I, § 10, Fla. Const. Goad contends the Act is an ex post facto law in that it increases his punishment for a criminal offense which occurred before the law took effect. Because the constitutional prohibition on ex post facto laws applies only to criminal legislation and proceedings, we initially address the nature of the Act. See Westerheide v. State, 831 So.2d 93, 99 (Fla.2002).
"The categorization of a particular proceeding as civil or criminal `is first of all a question of statutory construction.' " Kansas v. Hendricks, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (quoting Allen v. Illinois, 478 U.S. 364, 368, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986)). "We must initially ascertain whether the legislature meant the statute to establish `civil' proceedings. If so, we ordinarily defer to the legislature's stated intent." Hendricks, 521 U.S. at 361, 117 S.Ct. 2072. When attempting to discern *883 legislative intent, courts must first look at the actual language used in the statute. See Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000). Here, the Florida Legislature specifically set out its intent in section 960.29:
The Legislature finds that former approaches to the problem of compensating crime victims through restitution have proven inadequate or have been inconsistently applied in many cases. The Legislature also finds that there is an urgent need to alleviate the increasing financial burdens on the state and its local subdivisions caused by the expenses of incarcerating convicted offenders.
(1) To remedy these problems, consistent with the preservation of all citizens' constitutional rights, the Legislature intends:
(a) To provide a legal mechanism, in the form of a civil restitution lien, that will enable crime victims, the state, and other aggrieved parties to recover damages and losses arising out of criminal acts. The civil restitution lien shall be imposed against the real and personal property owned by the convicted offender who has committed an offense causing such damages and losses.
(b) To prevent convicted offenders from increasing their assets after conviction, while their crime victims and the state and local subdivisions remain uncompensated for their damages and losses. To further this legislative purpose, the civil restitution lien shall attach not only to the offender's current assets but also, should these assets fail to satisfy the lien, to any future assets or "windfall" proceeds which may accrue to the defendant, up to the full amount of the lien.
(c) To provide a schedule of liquidated damages, based on the type of crime committed, in order to facilitate swift and uniform determinations of the amounts of civil restitution liens, and to facilitate judicial convenience in entering restitution lien orders. To further these legislative purposes, a schedule of liquidated damages, based on the type of crime committed, shall be employed to assess the amounts of civil restitution liens. The schedule of liquidated damages shall also serve to ensure that the amount of each civil restitution lien bears a rational relation to the amount of actual damages incurred as a result of the crime.
(d) To impose a long-term civil liability for the costs of incarceration, by means of the civil restitution lien, against a convicted offender, regardless of the offender's financial status at the time of conviction.
(2) The Legislature also finds that crime victims, the state, and its local subdivisions are entitled to rough remedial justice and they may demand compensation for damage and losses.
(3) The Legislature declares that:
(a) The intent of the statute is rationally related to the goal of fully compensating crime victims, the state, and its local subdivisions for damages and losses incurred as a result of criminal conduct.
(b) This act rests upon the principle of remediation and not punishment, which is meted out by criminal sanctions afforded by law.
(4) The Legislature recognizes that, in many individual cases, the liquidated damage amount provided does not fully compensate crime victims for their actual damages and losses. It is the legislative intent that the liquidated damages authorized in this act bear a rational relation to the damages and losses a crime victim incurs as a result of a convicted offender's conduct, and the state *884 and its local subdivisions incur as a result of implementation of a convicted offender's sentence.
§ 960.29, Fla. Stat. (Supp.1994). The plain language of this statute clearly sets forth the Legislature's intent to afford a civil remedy to address the State's need to recover the incarceration costs of convicted offenders. Nothing on the face of the statute suggests otherwise.
While "the civil label is not always dispositive," the Legislature's stated intent should only be rejected where the challenging party presents "`the clearest proof' that `the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' that the proceeding be civil." Allen, 478 U.S. at 369, 106 S.Ct. 2988 (quoting United States v. Ward, 448 U.S. 242, 248-49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). See also Hudson v. United States, 522 U.S. 93, 100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (noting that "`only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty"). We find that Goad has failed to present the proof necessary to meet this burden, and base our decision on a review of seven factors[3] used by the Supreme Court to decide whether a statute is so punitive as to transform what was intended as a civil remedy into a criminal penalty.
In determining whether a civil statute is in reality punitive in nature, we must consider: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishmentretribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. Hudson, 522 U.S. at 99-100, 118 S.Ct. 488 (relying on Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)). Goad concedes that factors (1), (6), and (7) point to the civil nature of the Act, and we agree. Also, the sanction in this case does not come into play on a finding of scienter, and although the potential imposition of a lien may have some deterrent effect, the Supreme Court has recognized that "all civil penalties have some deterrent effect," and "deterrence may serve civil as well as criminal goals." Hudson, 522 U.S. at 102, 105, 118 S.Ct. 488. The sanction applies to a convicted offender's status as an inmate, not to a particular behavior that is already a crime. Finally, the statute does not seek recovery beyond the government's actual costs of incarceration. See Ilkanic v. City of Fort Lauderdale, 705 So.2d 1371, 1373 (Fla.1998) (finding the amount of $50 per day to be "reasonably related to the costs of incarceration").
Our decision in Ilkanic further supports the conclusion that the Act is a civil remedy and thus cannot violate the prohibition against ex post facto laws. In rejecting due process and equal protection challenges to section 960.239, this Court in Ilkanic noted that the "order imposing the incarceration charges [is] enforced in the same manner as a judgment in a civil action" and the "lien created upon the imposition of a per diem charge has the same effect as the lien created by the entry of a civil judgment." Id. at 1373. Therefore, we hold that imposing a civil *885 restitution lien pursuant to sections 960.293 and 960.297 to recover the incarceration costs of convicted offenders is a civil remedy that is not so punitive in nature as to constitute criminal punishment. Goad has failed to present clear proof that the Act actually operates as a criminal sanction that is capable of violating the prohibition against ex post facto laws.

DUE PROCESS CLAIM
Goad claims that the Act violates his substantive due process rights because sections 960.293 and 960.297 attach new legal consequences to events completed prior to the enactment of the law. "Substantive due process under the Florida Constitution protects the full panoply of individual rights from unwarranted encroachment by the government." Department of Law Enforcement v. Real Property, 588 So.2d 957, 960 (Fla.1991). To determine whether the encroachment can be justified, courts have considered, among other things, the propriety of the State's purpose, the nexus between the means chosen by the State and the goal it intended to achieve, and whether individuals are ultimately being treated in a fundamentally unfair manner in derogation of their substantive rights. See id.
In Ilkanic, this Court rejected a substantive due process challenge to section 960.293(2)(b):
We conclude that imposing a per diem charge on convicted offenders clearly relates to a permissive legislative objective of reimbursing public bodies for the costs expended in incarcerating these persons. Furthermore, we believe that the flat charge of $50 per day is reasonably related to the costs of incarceration.
705 So.2d at 1372-73. We find that this reasoning applies equally to section 960.297, the mechanism for imposing the $50 per day reimbursement.
For offenders convicted before July 1, 1994, section 960.297(2), Florida Statutes (Supp.1994),[4] provides that the State may recover incarceration costs, up to $50 per day, for the portion of the offender's sentence remaining after July 1, 1994. Goad contends that the statute violates his right to substantive due process because section 960.297 attaches a new penalty to conduct completed before the statute's enactment. We disagree because in essence, Goad is claiming that at the time he was convicted he had a vested right to free room and board while incarcerated. This is where Goad's argument fails because there simply is no such vested right. Goad is not being treated in a fundamentally unfair manner in derogation of his substantive rights because there is no substantive right in not having to pay for the costs of one's incarceration. Moreover, we find that the State's purpose for the Actthe urgent need to alleviate the increasing financial burdens on the State and its local subdivisions caused by the expenses of incarcerating convicted offendersis proper. See Ilkanic, 705 So.2d at 1372-73 (concluding "that imposing a per diem charge on convicted offenders clearly relates to a permissive legislative objective of reimbursing *886 public bodies for the costs expended in incarcerating these persons").

CONCLUSION
Accordingly, we approve the First District's decision below and disapprove Gary and Alberts to the extent that those cases find that sections 960.293 and 960.297 violate the constitutional prohibition against ex post facto laws.
It is so ordered.
ANSTEAD, C.J., WELLS, PARIENTE, and LEWIS, JJ., and SHAW and HARDING, Senior Justices, concur.
NOTES
[1] See §§ 960.29-.297, Fla. Stat. (Supp.1994).
[2] The Act was implemented to address two concerns: the problem of compensating crime victims through restitution and the urgent need to alleviate the increasing financial burdens on the State and its local subdivisions caused by the expenses of incarcerating convicted offenders. See § 960.29, Fla. Stat. (Supp.1994). Goad challenges only those portions of the Act that relate to the recovery of incarceration costs by the State.
[3] Hudson describes the seven factors as "guideposts" for determining whether a civil statute actually imposes a remedy that is in the nature of criminal punishment. 522 U.S. at 99, 118 S.Ct. 488.
[4] Section 960.297 provides in full:

(1) The state and its local subdivisions, in a separate civil action or as counterclaim in any civil action, may seek recovery of the damages and losses set forth in s. 960.293.
(2) For those convicted offenders convicted prior to July 1, 1994, the state and its local subdivisions, in a separate civil action or as a counterclaim in any civil action, may seek recovery of the damages and losses set forth in s. 960.293, for the convicted offender's remaining sentence after July 1, 1994.