[No. B170872. Second Dist., Div. Five. July 20, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMAAL RAYSHAWE WALLACE, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.B.–II.C.

## COUNSEL

Gary Mandinach, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jaime L. Fuster and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TURNER, P. J.—**

## I. INTRODUCTION

Defendant, Jamaal Rayshawe Wallace, appeals from his conviction of second degree robbery (Pen. Code,[1] § 211) with personal firearm use. (§ 12022.53, subd. (b).) Defendant was sentenced to 15 years in state prison. He was ordered to pay $310 in victim restitution (§ 1202.4, subd. (f)), a $2,000 restitution fine (§ 1202.4, subd. (b)), a $2,000 parole restitution fine if he violated the conditions of his parole (§ 1202.45), and a $20 court security fee (§ 1465.8, subd. (a)(1)). Defendant received credit for 139 days of actual presentence custody, plus 20 days of conduct credit (§§ 2933.1, 667.5, subd. (c)(9)), for a presentence custody credit of 159 days.

██ We appointed counsel to represent defendant on appeal. Counsel has filed a brief in which no issues were raised. (*People v. Wende* (1979) 25 Cal.3d 436, 441–442 [158 Cal.Rptr. 839, 600 P.2d 1071]; see *Smith v. Robbins* (2000) 528 U.S. 259, 264 [145 L.Ed.2d 756, 120 S.Ct. 746].) On January 15, 2004, we advised defendant he had 30 days within which to submit by brief or letter any grounds of appeal, contentions, or arguments he wished this court to consider. No response has been received. We asked the parties to address two issues, one of which we will discuss in the published portion of this opinion. In the published portion of this opinion, we conclude that, consistent with the ex post facto clauses of the United States and California Constitutions, the section 1465.8, subdivision (a)(1) $20 court security fee, which was part of a budget trailer bill, may be imposed on defendants whose crimes were committed prior to its August 17, 2003, effective date.

---

[1] All further statutory references are to the Penal Code except where otherwise noted.

## II. DISCUSSION

### A. The $20 Court Security Fee

Defendant contends the trial court erroneously imposed a $20 court security fee. Defendant argues that since he committed his offense prior to the effective date of section 1465.8, subdivision (a)(1), the imposition of the $20 court security fee violates the ex post facto provisions of the federal and state Constitutions. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.) We disagree.

Section 1465.8 states in its entirety: "(a)(1) To ensure and maintain adequate funding for court security, a fee of twenty dollars ($20) shall be imposed on every conviction for a criminal offense, including a traffic offense, except parking offenses as defined in subdivision (i) of Section 1463, involving a violation of a section of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code. [¶] (2) For the purposes of this section, 'conviction' includes the dismissal of a traffic violation on the condition that the defendant attend a court-ordered traffic violator school, as authorized by Sections 41501 and 42005 of the Vehicle Code. This security fee shall be deposited in accordance with subdivision (d), and may not be included with the fee calculated and distributed pursuant to Section 42007 of the Vehicle Code. [¶] (b) This fee shall be in addition to the state penalty assessed pursuant to Section 1464 and may not be included in the base fine to calculate the state penalty assessment as specified in subdivision (a) of Section 1464. [¶] (c) When bail is deposited for an offense to which this section applies, and for which a court appearance is not necessary, the person making the deposit shall also deposit a sufficient amount to include the fee prescribed by this section. [¶] (d) Notwithstanding any other provision of law, the fees collected pursuant to subdivision (a) shall all be deposited in a special account in the county treasury and transmitted therefrom monthly to the Controller for deposit in the Trial Court Trust Fund. [¶] (e) The Judicial Council shall provide for the administration of this section." Section 1465.8 was enacted as part of Assembly Bill No. 1759 (2003–2004 Reg. Sess.), hereafter Assembly Bill No. 1759. (Stats. 2003, ch. 159, § 25.) The enactment of section 1465.8 was conditional upon specified expenditure levels for trial court funding appropriations being approved as part of the fiscal year 2003–2004 budget. (Stats. 2003, ch. 159, § 27.[2]) Because Assembly Bill

---

[2] Section 27 of Assembly Bill No. 1759 states: "Sections 1, 8, 9, 11, 19, 21, 23, and 25 of this act shall become operative only if the total appropriation for the support of trial court funding in Item 0450-101-0932 of the Budget Act of 2003, as enacted, is two billion one hundred eighty-six million eight hundred sixty-four thousand dollars ($2,186,864,000) or more and the total appropriation for support of trial court funding in Item 0450-111-0001 of the Budget Act of 2003, as enacted, is one billion one million one thousand dollars ($1,001,001,000) or more; and in that event, shall become operative on the 15th day after the effective date of this act or on July 1, 2003, whichever is later."

No. 1759 was part of the fiscal year 2003–2004 budget, it was adopted as an urgency measure. (Stats. 2003, ch. 159, § 29.)

In addition to the foregoing, the codified provisions of Assembly Bill No. 1759 made extensive changes to the allowable fees that may be charged litigants and created a mechanism for managing court security issues. Among the statutory changes in Assembly Bill No. 1759 were: increases in fees under specified circumstances in small claims actions (Code Civ. Proc., § 116.230; Stats. 2003, ch. 159, §§ 1–2); imposing new costs for issuance of documents relative to the enforcement of small claims judgments (Code Civ. Proc., § 116.820; Stats. 2003, ch. 159, § 3); requiring the reimbursement of the Attorney General for investigation and other costs in enumerated enforcement actions (Code Civ. Proc., § 1021.8; Stats. 2003, ch. 159, § 4); establishment of the Public Rights Law Enforcement Special Fund to be administered by the Department of Justice (Gov. Code, § 12530; Stats. 2003, ch. 159, § 5); granting the Attorney General the right to recover attorney fees in charitable trust actions (Gov. Code, § 12598, subds. (b)–(c); Stats. 2003, ch. 159, § 6); clarification of the right of the Attorney General to recover attorney fees in Fair Employment and Housing Act enforcement actions (Gov. Code, § 12989.3, subd. (g); Stats. 2003, ch. 159, § 7); increased filing fees in civil actions (Gov. Code, § 26826.4; Stats. 2003, ch. 159, § 8); increased fees in probate actions (Gov. Code, § 26827; Stats. 2003, ch. 159, §§ 9–10); increasing the filing fee for specified motions and requiring the deposit of enumerated funds in the Trial Court Trust Fund (Gov. Code, § 26830; Stats. 2003, ch. 159, §§ 11–12); requiring specified fees collected in civil litigation to be transferred to the Trial Court Trust Fund on a monthly basis and providing for its administration (Gov. Code, § 68085.5; Stats. 2003, ch. 159, § 13); assessing fees for court reporter usage (Gov. Code, § 68086; Stats. 2003, ch. 159, § 14); increasing the fee for filing a notice of appeal (Gov. Code, § 68926.1; Stats. 2003, ch. 159, § 16); increasing the fee for filing a review petition in the California Supreme Court (Gov. Code, § 68927; Stats. 2003, ch. 159, § 17); establishing the Appellate Court Trust Fund (Gov. Code, § 68933; Stats. 2003, ch. 159, § 18); imposing a $20 surcharge for "court security" purposes to filing fees in civil actions (Gov. Code, § 69926.5; Stats. 2003, ch. 159, § 19); providing a mechanism for managing court security (Gov. Code, § 69927; Stats. 2003, ch. 159, § 20); and increasing the filing fees in limited civil cases. (Gov. Code, §§ 72055–72056; Stats. 2003, ch. 159, §§ 21–24.) Additionally, uncodified provisions of Assembly Bill No. 1759 allocated reimbursements in the event local entities incurred costs and limited the operability of the provisions relating to appellate fees and the Appellate Court Trust Fund. (Stats. 2003, ch. 159, §§ 26–28.)

Committee reports prepared as part of the legislative process that resulted in the adoption of Assembly Bill No. 1759 indicate the Legislature viewed the set of new laws that were ultimately enacted, including section 1465.8,

subdivision (a)(1), primarily as a budget measure. Assembly Bill No. 1759 as originally introduced stated only, "It is the intent of the Legislature to enact statutory changes relating to the Budget Act of 2003." (Assem. Bill No. 1759, as introduced Mar 11, 2003, § 1.) The Legislative Counsel's Digest for Assembly Bill No. 1759 as introduced on March 11, 2003, merely stated, "This bill would express the intent of the Legislature to enact statutory changes relating to the Budget Act of 2003." Other than the foregoing single sentence, no statutory changes appeared anywhere in Assembly Bill No. 1759 as originally introduced. The March 11, 2003, Assembly third reading report identified Assembly Bill No. 1759 thusly: "Allows the passage of trailer bills to accompany the Budget Bill (AB 100) in order to assure proper implementation of its provisions. The bill must be limited to address the implementation of the State's fiscal plan. [¶] [] This legislation would provide the mechanism to implement critical provisions of the Budget Act. The fiscal effect of this bill cannot be determined at this time." (Assem. 3d reading analysis of Assem. Bill No. 1759 as introduced (Mar. 11, 2003, p. 1.) Additionally, the third reading report explained the function of Assembly Bill No. 1759 as a "trailer bill" to implement the 2003–2004 fiscal year state budget: "This bill is one of 24 trailer bills to be submitted by the Budget Committee to complement the Budget Bill. Trailer bills are generally separated by subject area such as education, resources, or health, to minimize possible conflicts with single subject limitations that could occur if a general omnibus trailer bill were to be proposed. In addition, separate trailer bills are often used to address specific issues in the Budget Bill." (*Ibid.*) A Senate third reading report issued on June 18, 2003, mirrored the foregoing analysis. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1759, June 18, 2003, p. 1.) On June 3, 2003, Assembly Bill No 1759, as described in this paragraph, passed the lower house unanimously. (<http://www.leginfo.ca.gov/pub/bill/asm/ab_1751-1800/ab_1759_bill_20030802_history.html> [as of July 20, 2004].)

California Constitution, article IV, section 12, subdivision (c) mandates the budget be sent to the Governor on June 15. On June 25, 2003, Assembly Bill No. 1759 was amended on the Senate floor to include for the first time 27 sections. (Sen. Amend. to Assem. Bill No. 1759, June 25, 2003, §§ 1–27.) The June 25, 2003, Senate amendment provided for section 1465.8 in its current format. (Sen. Amend. to Assem. Bill No. 1759, *supra*, at § 25.) The Legislative Counsel's Digest made no reference to the purpose of Assembly Bill No. 1759 other than to recount the statutory provisions affected by its adoption.[3] A Senate report states: "Senate floor amendments of 6/25/03

---

[3] The Legislative Counsel's Digest for Assembly Bill No. 1759 as amended on June 25, 2003, states: "An act to amend Section 116.820 of, to amend, repeal, and add Section 116.230 of, and to add Section 1021.8 to, the Code of Civil Procedure, to amend Sections 12598, 12989.3, 68086, 68926, 68926.1, 68927, and 69927 of, to amend, repeal, and add Sections

constitute the bill. The previous version was a spot budget trailer bill." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1759 as introduced (June 25, 2003) p. 1, underscoring omitted.) The Senate Rules Committee report did not mention section 1465.8 but adverted to the budget-related provisions, virtually all of which were part of Assembly Bill No. 1759 as finally adopted. (Sen. Rules Com., 3d reading analysis, *supra*, at pp. 1–3.) When referring to the new or increased costs imposed on litigants, the report referred to them as "fees." (*Ibid.*)

A July 27, 2003, Senate report again summarized Assembly Bill No. 1759 without specific reference to section 1465.8. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1759 as amended July 27, 2003, pp. 1–2.) The report described the bill as, "Judiciary Omnibus 2003–04 Budget Trailer Bill." (*Id.* at p. 1.) When the legislation was returned to the Assembly for final approval, a report prepared for the Assembly members stated: "AS PASSED BY THE ASSEMBLY this bill expressed the intent of the Legislature to enact statutory changes to the Budget Act of 2003. [¶] FISCAL EFFECT: Makes various statutory changes to implement certain portions of the 2003 Budget Bill." (Assem. Floor Analysis, Conc. in Sen. Amends. to Assem. Bill No. 1759 as amended July 27, 2003, p. 2, underscoring omitted.) The report described the section 1465.8, subdivision (a)(1) $20 court security fee as a "surcharge." (Assem. Floor Analysis Assem. Bill No. 1759, *supra*, at p. 1.)

■ In assessing whether the court security fee is punitive and therefore subject to the United States and California Constitutions' ex post facto clauses, the relevant test is as follows: "The framework for our inquiry, however, is well established. We must 'ascertain whether the legislature meant the statute to establish "civil" proceedings.' *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997). If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is ' "so punitive either in purpose or effect as to negate [the State's] intention" to deem it "civil." ' *Ibid.* (quoting *United States v. Ward*, 448 U.S. 242, 248–249 . . . (1980)). Because we 'ordinarily defer to the legislature's stated intent,' *Hendricks, supra,* at 361, ' "only the clearest proof" will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty,' *Hudson v. United States*, 522 U.S. 93, 100 (1997) (quoting *Ward, supra,* at 249); see also *Hendricks, supra,* at 361; *United States v. Ursery*, 518 U.S. 267, 290 (1996); *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 365

26827, 26830, 72055, and 72056 of, to add Sections 12530, 68085.5, 68933, and 69926.5 to, and to add and repeal Section 26826.4 of, the Government Code, and to add Section 1465.8 to the Penal Code, relating to courts, and declaring the urgency thereof, to take effect immediately."

(1984)." (*Smith v. Doe* (2003) 538 U.S. 84, 92 [155 L.Ed.2d 164, 123 S.Ct. 1140]; see *In re Alva* (2004) 33 Cal.4th 254, 275–276 [92 P.3d 311] [applying *Smith* in evaluating whether sex offender registration is *punishment* for cruel or unusual punishment purposes].)

The first inquiry then is whether the Legislature in imposing the $20 court security fee intended to impose a civil rather than punitive regime. The United States Supreme Court described this initial ex post facto inquiry as follows: "The courts 'must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' *Hudson*, supra, at 99 (internal quotation marks omitted)." (*Smith v. Doe, supra*, 538 U.S. at p. 93.) The United States Supreme Court has described the judicial analysis that must be utilized in assessing an ex post facto claim: "We consider the statute's text and its structure to determine the legislative objective. *Flemming* v. *Nestor*, 363 U.S. 603, 617 (1960). A conclusion that the legislature intended to punish would satisfy an *ex post facto* challenge without further inquiry into its effects, so considerable deference must be accorded to the intent as the legislature has stated it. [¶] The courts 'must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' " (*Smith v. Doe, supra*, 538 U.S. at pp. 92–93.)

The Legislature never indicated it considered the $20 court security fee, which was imposed in both criminal and specified civil cases, as punishment. The stated reason for enacting the $20 court security fee appears in section 1465.8, subdivision (a)(1), "To ensure and maintain adequate funding for court security . . . ." The maintenance of "adequate funding for court security" purposes is unambiguously a nonpunitive objective. Assembly Bill No. 1759 was one of 24 trailer bills which were part of a "mechanism to implement critical provisions" of the fiscal year 2003–2004 state budget. (Assem. 3d reading analysis of Assem. Bill No. 1759, as introduced Mar. 11, 2003, p. 1.) The only expressed rationale for making Assembly Bill No. 1759 an urgency statute was a budgetary reason: "In order to provide for changes to implement the Budget Act of 2003, it is necessary that this act take effect immediately." (Stats. 2003, ch. 159, § 29.) Moreover, the $20 court security fee was imposed not merely upon persons convicted of crime. Government Code section 69926.5, subdivision (a), which was adopted pursuant to section 19 of Assembly Bill No. 1759, required a $20 court security surcharge also be imposed on the first paper filed on behalf of a plaintiff or a defendant in any limited and unlimited civil action or special proceeding and in probate matters. (Stats. 2003, ch. 159, § 19; Gov. Code, § 26820.4, 26826, 26827, 72055, 72056.) Moreover, section 1465.8, subdivision (a)(2) requires that the $20 surcharge be imposed when a traffic violation charge is *dismissed* because the alleged violator attends traffic school. Further, section 1465.8,

subdivision (c) requires that the $20 court security fee be collected when bail is posted—a scenario which includes arrestees who will never be charged in an information, indictment, or complaint with a crime. Additionally, section 1465.8 could only go into effect if specified levels of trial court funding were enacted by the Legislature. (Stats. 2003, ch. 159, § 27.) Although it conceivably could happen, it is difficult to divine a punitive purpose for a fee that would go into effect only if specified trial court funding levels ($2,186,864,000 "or more" for item 0450-101-0932 and $1,001,001,000 "or more" for item 0450-111-0001 in the 2003 Budget Act) were enacted. (*Ibid.*) Generally, the adoption of a statute with a punitive purpose is not dependent on trial court funding levels in budget line items. Finally, the Legislature has not chosen to refer to the $20 due upon a conviction as a fine; rather it is referred to in section 1465.8 on five occasions as a fee. The Legislature's choice of what in most cases would be considered a more nonpunitive term, a fee as distinguished from a fine, is directly relevant albeit not entirely dispositive in assessing the legislative intent question which is the first prong of the ex post facto analysis. (*Smith v. Doe, supra*, 538 U.S. at pp. 92–93; *United States v. One Assortment of 89 Firearms, supra*, 465 U.S. at p. 365, fn. 6 [congressional use of the term "penalty" to describe firearm forfeiture not dispositive].) After giving the expressly stated legislative purpose for enacting section 1465.8, subdivision (a)(1), "[t]o ensure and maintain adequate funding for court security," the deference mandated by controlling United States and California Supreme Court authority—as to the first prong of ex post facto analysis—we conclude the Legislature imposed the $20 fee for a nonpunitive purpose. (*Smith v. Doe, supra*, 538 U.S. at pp. 93–96.)

■ The second inquiry then is whether section 1465.8, subdivision (a)(1) is " ' "so punitive either in purpose of effect" ' " as to negate the Legislature's intention that the $20 fee be a civil disability. (*Smith v. Doe, supra* 538 U.S. at p. 92; *Kansas v. Hendricks, supra*, 521 U.S. at p. 361.) The Supreme Court has held though that " ' "only the clearest proof" ' " will suffice to override legislative intent and transform a civil remedy into a criminal penalty. (*Smith v. Doe, supra*, 538 U.S. at p. 92; *Hatton v. Bonner* (9th Cir. 2004) 356 F.3d 955, 967; see *In re Alva, supra*, 33 Cal.4th at p. 274 [cruel and unusual punishment context]; *People v. Castellanos* (1999) 21 Cal.4th 785, 802 [88 Cal.Rptr.2d 346, 982 P.2d 211] (conc. and dis. opn. of Kennard, J.).) The United States Supreme Court has utilized some of the factors listed in *Kennedy v. Mendoza-Martinez* (1963) 372 U.S. 144, 168-169 [9 L.Ed.2d 644, 83 S.Ct. 554], in evaluating the second prong of ex post facto analysis. (*Smith v. Doe, supra*, 538 U.S. at p. 97; see *People v. Castellanos, supra*, 21 Cal.4th at p. 802 (conc. and dis. opn. of Kennard, J.).) In the ex post facto context, the *Mendoza-Martinez* factors, which are not exclusive, are as follows: "The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history

and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." (*Smith v. Doe, supra,* 538 U.S. at p. 97; see *People v. Castellanos, supra,* 21 Cal.4th at p. 802 (conc. and dis. opn. of Kennard, J.).)

As to the first *Mendoza-Martinez* factor—whether a practice has historically been considered a punishment—in one sense defendant's argument has some substance. His conviction has resulted in the imposition of the $20 fee. Whether it is referred to as a fee, fine, penalty, charge, cost, expense, or surcharge, defendant's obligation to pay the $20 arose only from his conviction. Fines are generally considered to be punishment. But there are several countervailing considerations. A court security fee can logically be viewed as a nonpunitive fee assessed for the use of court facilities which is designed to make them safer. This is particularly true when the same fee is imposed in limited and unlimited civil and probate cases as well. (Stats. 2003, ch. 159, § 19; Gov. Code, § 69926.5, subd. (a).) Moreover, in traffic cases, the $20 fee is imposed even when the alleged violator's case is dismissed because he or she attends traffic school. (Stats. 2003, ch. 159, § 25; § 1465.8, subd. (c).) Also, as noted previously, the enactment of section 1465.8, subdivision (a)(1) was dependent on the adoption of specified trial court funding levels. (Stats. 2003, ch. 159, § 27.) In this respect, section 1465.8, subdivision (a)(1) is unlike any other form of punishment—its effectiveness was entirely dependent on funding of other budget line items.

The second *Mendoza-Martinez* factor—whether section 1465.8, subdivision (a)(1) imposes a traditional punishment—militates strongly against defendant. This factor was described by the Supreme Court thusly, "Here, we inquire how the effects of the [challenged statute] are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." (*Smith v. Doe, supra,* 538 U.S. at pp. 99–100; *Hatton v. Bonner, supra,* 356 F.3d at p. 963.) The $20 court security fee is a small amount of money. Further, the United States Supreme Court has explained in the context of a challenge to an Alaska sex offender registration law: "The Act imposes no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint. *Hudson* [*v. United States, supra*], 522 U.S., at 104. The Act's obligations are less harsh than the sanctions of occupational debarment, which we have held to be nonpunitive. See *ibid.* (forbidding further participation in the banking industry); *De Veau* v. *Braisted,* 363 U.S. 144 . . . (1960) (forbidding work as a union official); *Hawker* v. *New York,* 170 U.S. 189 (1898) (revocation of a medical license)." (*Smith v. Doe, supra,* 538 U.S. at p. 100; *Hatton v. Bonner, supra,* 356 F.3d at p. 963.) On this count, the $20 court security fee is not a traditional punishment for ex post facto purposes.

As to the third *Mendoza-Martinez* factor—whether the $20 fee promotes traditional *aims* of punishment—it does not. The $20 court security fee, which is part of an extensive statutory scheme applicable to both criminal and specified civil cases designed to fund and coordinate court security, does not promote the traditional aims of punishment—it promotes court security. Requiring a convicted criminal defendant to pay $20 to help fund court security will not deter a solitary potential criminal from committing a single crime—not one.

As to the fourth *Mendoza-Martinez* factor—whether the challenged provision has a rational relation to a nonpunitive purpose—the $20 court security fee obviously does. The fifth *Mendoza-Martinez* factor—whether the $20 court security fee is excessive with respect to its purpose of helping fund safe courthouses—militates quite strongly in favor of the position of the Attorney General. The minimal fee is not excessive and furthers the purpose of section 1465.8, subdivision (a)(1) which, as part of Assembly Bill No. 1759, has as its purpose insuring appropriate funding levels for court operations and providing a more rational process for planning court security.

These sometimes countervailing considerations do not permit us to find the imposition of the $20 court security fee was an ex post facto violation. As noted previously, we cannot override the legislative treatment of the $20 section 1465.8, subdivision (a)(1) fee as a nonpunitive provision unless there is " ' "the clearest proof" ' " that section 1465.8 is " ' "so punitive either in purpose or effect as to negate" ' " the Legislature's intention to treat it as a civil matter. (*Smith v. Doe, supra*, 538 U.S. at p. 92; *Hatton v. Bonner, supra*, 356 F.3d at p. 967; see *In re Alva, supra*, 33 Cal.4th at p. 274; *People v. Castellanos, supra*, 21 Cal.4th at p. 802 (conc. and dis. opn. of Kennard, J.).) Defendant has failed to present the "clearest proof" that the $20 court security fee, which is imposed in criminal and civil cases, is so punitive in its purpose or effect as to override the Legislature's treatment of it as a nonpunitive measure.

Our views in this regard are consistent with other decisions. Appellate courts have consistently held that a minimal fee, imposed for a nonpunitive purpose and without punitive effect, is not subject to the limitations of the ex post facto clause. (*People v. Rivera* (1998) 65 Cal.App.4th 705, 708–712 [76 Cal.Rptr.2d 703] [jail booking ($135) and classification ($33) fees]; *Taylor v. State of Rhode Island* (1st Cir. 1996) 101 F.3d 780, 782–784 [$15 monthly probation fee]; *Goad v. Florida Dept. of Corrections* (Fla. 2003) 845 So.2d 880, 882–885 [$50 per day incarceration-cost fee]; *Hayden v. State* (Ind.Ct.App. 2002) 771 N.E.2d 100, 102–104 [$2 document storage fee and $2 automated record-keeping fee]; *State v. Oliver* (Iowa 1998) 588 N.W.2d 412, 415–416 [$100 probation enrollment fee]; *State v. Likins*

(1995) 21 Kan.App.2d 420 [903 P.2d 764, 774–775] [$150 lab fee]; *Frazier v. Montana State Dept. of Corrections* (1996) 277 Mont. 82 [920 P.2d 93, 94–96] [$10 per month probation or parole supervision fee].) Defendant's ex post facto contention has no merit.

### B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. DISPOSITION

The judgment is modified to reflect a presentence custody credit of 158 days, consisting of 138 days of presentence custody, and 20 days of conduct credit. The judgment is affirmed as modified. The clerk of the superior court shall prepare and deliver to the Department of Corrections an amended abstract of judgment that sets forth the modified presentence custody credit award of 158 days. In addition, the amended abstract of judgment shall omit the reference to a "$20 Court security charge pursuant to section 69926,(a) GC & 1465(a)(1) PC" under item 7, "Other orders," and shall instead refer to a "$20 court security fee pursuant to Penal Code section 1465.8, subdivision (a)(1)."

Grignon, J., concurred.

**MOSK, J.**, Concurring.—I concur.

The imposition of a monetary obligation upon conviction pursuant to a Penal Code provision would seem to be a penalty that is subject to the ex post facto laws. (U.S. Const., art. 1, § 10, cl. 1; Cal. Const., art. I, § 9.) I believe the obligation results in a punishment. Defendant is not a voluntary user of the court facility.

Nevertheless, the authorities support the conclusion of the majority. Even the dissenters in *Smith v. Doe* (2003) 538 U.S. 84 [155 L.Ed.2d 164, 123 S.Ct. 1140], appear to acknowledge that some sanctions may not be subject to the ex post facto clause of the United States Constitution. Justice Ginsburg, in disagreeing with the majority that a sex registration act did not violate the ex post facto clause, said, "What ultimately tips the balance for me is the Act's excessiveness in relation to its nonpunitive purpose." (*Id.* at p. 116.) Here, the provision involves a modest sum. Justice Stevens, also dissenting in *Smith v. Doe*, stated, "In my opinion, a sanction that (1) is imposed on everyone who

---

*See footnote, *ante*, page 867.

commits a criminal offense, (2) is not imposed on anyone else, and (3) severely impairs a person's liberty is punishment." (*Id.* at p. 113.) The fee here does not satisfy all of those criteria.

The court in *People v. Castellanos* (1999) 21 Cal.4th 785 [88 Cal.Rptr.2d 346, 982 P.2d 211], held that California's sex offender registration provision did not violate the ex post facto clauses of the United States and California Constitutions. A dissent stated, "as the lead opinion itself states, '*two* factors appear important in each case: whether the Legislature intended the provision to constitute punishment and, if not, whether the provision is so punitive in *nature or effect* that it must be found to constitute punishment despite the Legislature's contrary intent.' " (*Id.* at p. 806 (dis. opn. of Mosk, J.).) Justice Mosk concluded that the sex offender registration provisions was a penal sanction because it was sufficiently punitive in *nature or effect*. It is tenable that the provision here is not " 'so punitive in nature or effect that it must be found to constitute punishment despite the Legislature's contrary intent.' " (*Ibid*, italics omitted.)

The court in *People v. Rivera* (1998) 65 Cal.App.4th 705, 711 [76 Cal.Rptr.2d 703], said, "The fact that the fees come into play only upon a criminal conviction is a factor which can be viewed as punitive. However, an alternative view is that this simply reflects a legislative determination that those who are not convicted are involuntary users of the jail system who should not have to pay for services for which they did not choose to avail themselves; whereas those who are convicted in effect 'chose' to use the jail services when they chose to commit an unlawful act."

I have some difficulty with the idea that by committing a crime, a defendant "chose" to use the services of the criminal justice system, although perhaps that use is what he or she should expect. Also, as the court in *People v. High* (2004) 119 Cal.App.4th 1192 [15 Cal.Rptr. 3d 148] (*High*) noted in holding that the imposition of a state court facilities construction penalty upon a convicted defendant violated the state and federal ex post facto clauses, if the monetary charge "were a user fee, there would be a rational relationship between the amount of the assessment and the extent of the individual['s] use." (*Id.* at p. 1198.) Here, the $20 charge is imposed no matter how long the defendant is in trial or even if he pleads guilty.

Nevertheless, unlike in *High*, in which the charge is labeled a "penalty," the charge here is referred to as a "fee." (*High, supra,* 119 Cal.App.4th at p. 1199.) The other points in the majority opinion also are compelling. Accordingly, I conclude that the current state of the law requires a conclusion that the fee in question does not violate ex post facto provisions.

The increasing imposition of monetary sanctions upon those convicted of crimes to solve budgetary problems or to impose greater punishment could be counterproductive. Saddling with debt those who are serving or have served their criminal sentences is neither rehabilitative nor a deterrent. Also, the fees, even if collected, may not be worth the effort in view of the expense entailed in implementing and enforcing such programs.