Lewis A. Case and Babette Case v. Texas Company.

156 So. 137.

En Banc.

Opinion Filed July 3, 1934.

A. Melrose Lamar, for Plaintiff in Error;

Cyril C. Copp, George A. Pierce and Knight, Adair, Cooper & Osborne, for Defendant in Error.

Per Curiam.—In September, 1931, Lewis A. Case and Babetta Case, his wife, brought this action in the Circuit Court for Palm Beach County, against the Texas Company for recovery of the sum of $1,208.70 which that company had retained from the purchase price of certain property under an agreement entered into on December 5, 1927, by which it was agreed that such sum should be retained by the vendee, Texas Company, to abide the result of appropriate proceedings brought in the Circuit Court of Palm Beach County to determine the disposition of said retained amount, if the parties were unable to settle that question

amongst themselves. The material facts in the case and a summary of the pleadings and issues will be found in the opinion prepared by Mr. Justice ELLIS. filed herewith. Such opinion is concurred in by a majority of this Court with the exceptions hereinafter set forth.

A majority of the Court are of the opinion that the rendition of judgment in this cause for the defendant below was error and that the plaintiffs should have been allowed to recover because of the breach by the defendant, Texas Company, of the agreement of December 5, 1927, under which the money retained by it from the purchase price was agreed to be retained to be applied in payment of the assessment against the property for the paving and sewer improvement either when the parties agreed upon a settlement, or after the matter had been determined by a friendly suit in the circuit court, but that the measure of recovery to be allowed should be limited to a recovery of the retained sum of $1,208.70, less the amounts that the Texas Company has been compelled to actually suffer the loss of, in order to secure the cancellation of the paving assessment liens concerning which the retained sum was withheld, and not the amount originally assessed against the purchased land for paving assessments. No deduction should be made for the alleged sewer assessments which appear to be ineffective as encumbrances.

The majority of the Court construe the contract of December 5, 1927, as having been made for the principal purpose of idemnifying the Texas Company against liability for municipal assessment liens then contemplated against the land it was buying, but the legal existence of which was doubtful. The contract must be read in the light of facts known to have been contemplated by the parties at the time the Texas Company purchased from the Cases the

land upon which paving liens were later imposed as of a date prior to the purchase.

A majority of the Court are further of the view that the assessment liens subsequently imposed by the City of West Palm Beach, when imposed, then related back and constituted an encumbrance on the property as of October 8, 1927 (the date of vendor's contract to deliver satisfactory unencumbered title), within contemplation of the retention contract of December 5, 1927, but that the stipulated encumbrances having subsequently become dischargeable for a less amount than the whole sum of $1,208.70 retained as indemnity against liability for these liens, that the Texas Company when it breached its contract by discharging said liens out of said retained sum without plaintiff's consent or prior legal determination of the liability, only damaged plaintiffs to the extent that it refused to pay over the difference between what it legally had to pay out and the total retained amount.

The judgment appealed from is therefore reversed with directions to reinstate the proceedings in the court below and to proceed according to law in a manner, and to a final determination, not inconsistent with this opinion.

Reversed and remanded with directions.

DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.

ELLIS, J.—Chapter 9945, Acts of 1923, Laws of Florida, which was amended many times and finally superseded by Chapter 16758, Laws of 1933, constituted the city charter for the City of West Palm Beach in the year 1927. The city was empowered to pave streets and construct sewers and drains.

Chapter 13550, Acts of 1927, which became effective in June, 1927, amended Section 68 of Chapter 9945, *supra*, as

the same was amended by Chapter 11310, Laws of 1925. Section 68 of Chapter 9945, as thus amended, prescribed the method which should be pursued by the city commissioners whenever they decided to pave streets and construct sewers within the city. It provided that the expense of the work, or such proportion thereof as the commissioners may determine, may by resolution adopted by the commissioners be assessed against the property benefited thereby, or against the abutting property in proportion to frontage, and they shall cause a notice of the making of such assessment to be published.

The section requires that the notice shall contain a description of the tract of land assessed, the amount of the assessment, the date when it becomes due, and the rate of interest it bears. Provision is made for the hearing of complaints, the decreasing or increasing of the assessment, and that all persons interested who fail to file written protests or complaints shall be deemed to have consented to the assessment. It is also provided that the assessment shall be and constitute a lien against the land against which the same is made "from the date of the entry in said improvement lien book" of the "amount of the assessment against each lot."

A "City Improvement Lien Book" is required to be prepared and kept in which "shall be entered the date of the making of each assessment, the amount of the assessment against each lot" and such other information as may be deemed advisable. The entry of the assessment in the lien book constitutes notice to the public of "said lien against said lands."

On October 8, 1927, a contract was entered into between Lewis A. Case and Babetta Case, his wife, of the one part and The Texas Company, a corporation, of the other part

by which it was agreed that the Cases would sell and the corporation would buy Lot 6 of Block 1 of Rosedale Addition to West Palm Beach for the price of $15,000.00 payable in cash upon delivery by the Cases to the corporation of a warranty deed for the property. The agreement recited that the sellers had delivered to the buyer "complete abstracts of title brought down to this date" and that the buyer should have sixty days after the delivery of the abstracts within which to make examination of the title and to complete the purchase.

It was provided that if the corporation should complete the purchase as contemplated the sellers would execute and deliver to the purchaser a "good and sufficient warranty deed with full common-law covenants in form satisfactory to buyer's attorneys, conveying to the buyer good and marketable *record title* to said property, free from incumbrances except as herein stated." (Italics supplied.) There were no exceptions stated unless such exceptions are found in the second paragraph of the contract which provides that "All taxes for the current year and all rentals and insurance premiums and interest on existing mortgages (if any) shall be pro-rated as of the date of delivery of said warranty deed."

The buyer within sixty days decided to complete the contract and take title, but a controversy arose between the sellers and buyer whether certain improvements for paving and for sewers which had been partially made by the city on Roseland Avenue, on which the land was situated, the estimated cost of which was $848.70 for the paving and $360.00 for sewers, constituted an incumbrance which the buyer should assume or whether such cost "when assessed by the city is an expense that should be borne" by the sellers. They disagreed upon that proposition and could not settle

it definitely, so they entered into an agreement on December 5, 1927, whereby the amount of $1,208.70, the total estimated cost of the "paving and sewers" should be retained by the buyer out of the purchase price "subject to determination of the question as to whether this expense shall be borne by" the seller or the buyer; "it being understood between the parties hereto that if the parties are unable to agreeably settle the said question, a friendly suit shall be instituted in the Circuit Court of Palm Beach County, Florida, for the purpose of obtaining a judicial determination thereof."

Two years before the contract of sale between the Cases and The Texas Company was entered into, the city commission passed a resolution ordering certain paving to be done in "Paving District 5-B" in which district the lot was located which the Cases agreed to sell to the Texas Company. According to a stipulation filed by the parties, and which appears in the bill of exceptions, the city commission adopted the resolution pursuant to the provisions of Chapter 9945, Section 68, *supra,* as amended. The contract for the sewers to be constructed in Sewer District 10-A was let in July, 1926, but the city commissioners had not at the date of the stipulation, which was after the action was brought in this case, adopted a resolution assessing the expense for sewer improvements against the lot.

The stipulation then recites the transaction between the parties, the closing of the contract, and the retention by the buyer of $1,208.70 of the contract price as hereinbefore set out. It also recites that on February 17, 1928, two months and ten days afer the contract was closed, the money paid, title passed and $1,208.70 retained by the buyer, the city commissioners adopted a resolution assessing the expense of paving the lot at $1,314.67 as its "proportionate share of the whole cost of paving" in the district and that

it was payable without interest March 17, 1928, three months and twelve days after the contract was closed. In September, 1928, The Texas Company paid the assessment and accrued interest.

In April, 1931, according to the stipulation, the city commissioners allowed to The Texas Company a reduction of one-third of the amount of the assessment and issued a certificate of indebtedness to the company in that amount. Later further reduction was allowed and certificate issued for that amount, but those certificates have never been redeemed by the city. The last reduction amounted to the sum of $606.45, the first to $438.22. If the reductions should be collected it would leave the amount paid on the so-called lien about $270.00.

In September, 1931, Lewis A. Case and Babetta Case, his wife, the vendors, brought an action in the Circuit Court for Palm Beach County against The Texas Company for recovery of the $1,208.70 which that company had retained from the purchase price of the lot under the agreement of December 5, 1927, by which it was agreed that the question whether the estimated cost of the paving and sewers should be paid by the sellers or the buyers should be determined in appropriate proceedings in the Circuit Court for Palm Beach County if the parties were unable to settle the question among themselves.

The declaration contains three counts. The first is a common-law count for money received by the defendant for the use of the plaintiff. The second is for breach of the contract of sale in failing to pay the balance due on the purchase price of the lot. The third declared on the contract or agreement of December 5, 1927, and alleged the breach to consist of a payment by the defendant to the city of the sum of $1,314.67, the amount which it had assessed

as the proportionate share of the paving cost against the lot, notwithstanding the parties were unable to agree that it should be borne by the plaintiffs and no action had been brought to determine the question according to the terms of the agreement. The count alleged the reduction made by the city of one-third of the assessment and claimed that the defendant was indebted to the plaintiff in the sum of $1,208.70 retained by it from the purchase price of the lot or the amount of the reduction amounting to $402.90.

The transcript shows no signature to the declaration.

Six pleas were interposed to the declaration. The first and second were that the defendant never promised and was never indebted as alleged. The third plea averred that all things had been done and all actions had been performed by the city and its officers necessary to make the cost of the alleged improvements a charge and incumbrance upon the property prior to the time the defendant agreed to purchase it. The fourth averred that the city had done all things necessary to make the cost of the alleged improvement a lien upon the property prior to the acceptance of the deed from the plaintiff. The fifth plea was in the nature of a cross action in which the defendant claimed that the plaintiff owed to it the difference between the sum of $1,208.70 retained from the purchase price and the sum of $1,371.07 which the defendant paid to the city in settlement of the amount assessed against the lot as its portion of costs of paving which was assessed against it, the plea averring that the city had done all that was necessary for it to do to make the assessment a lien upon the property conveyed to the defendant. The sixth plea is also in the nature of a cross action against the plaintiffs for the sum of $360.00, the same being the amount estimated to be the charge or assessment against the lot for sewers. The plea avers that the reten-

tion of $1,208.70 was by agreement to cover both assessments for paving and sewers, and that the defendant had paid for the paving assessment alone a sum greater than that so that the whole estimated cost for sewers is still due to the defendant by the plaintiffs.

The case by agreement was tried by the judge without the intervention of a jury. An agreed statement of facts was submitted. The cause seems to have been tried on that statement, the substance of which has heretofore been given.

The learned Circuit Judge decided that the plaintiffs should take nothing by their suit and judgment was entered for the defendant. His decision was based upon the opinion as expressed by him that the "assessment for paving constituted a lien from July 16, 1925, so that it was an incumbrance against the property as of the time of the sale to defendant."

The plaintiffs took a writ of error to that judgment.

The judgment should have been for the plaintiffs not only on the pleadings and evidence submitted but on the agreed statement of facts and the provisions of "Section 68 of the Charter of West Palm Beach, being Section 68 of Chapter 9945, Acts of 1923, as amended."

The plaintiffs were entitled to recover because of the breach by the defendant of the agreement of December 5, 1927, under which the money retained by it from the purchase price was to have been applied in payment of the assessment against the property for the paving and sewer improvement only when the parties agreed upon a settlement or after the matter had been determined by a friendly suit in the circuit court. That feature of the plaintiff's case was sought to be avoided by the argument that the payment of the assessment by the defendant was compulsory. While the paving had been completed prior to the date of the

contract of sale, which was October 8, 1927, the sewer work was incomplete, the same having lain dormant since 1926. No assessment had been made against the lot for either paving or sewer. The amounts of $848.70 for paving and $360.00 for sewer cost, agreed to be withheld by the defendant, were mere estimates of the amounts which might be assessed against the property, but the agreement was made not in recognition of the existence of a lien in the total of those sums but by way of security to the defendant if it should be held by a court of competent jurisdiction that there existed against the property at the time of the transfer of title a lien against the property for any sum on account of the improvements.

The amount which the defendant paid was $465.00 more on account of the paving lien which became a lien under Chapter 13550, Laws 1927, from the date of the entry of the assessment in the lien book which was made after the conveyance of title to the defendant. A lien for that amount did not exist under the Act which was in force when the contract for the conveyance of the land was made. In any event, it was for a larger amount than the parties agreed should be retained from the purchase price of the land and should not have been paid in excess of the amount agreed upon over plaintiffs' protest. The amount assessed under the Act of 1927, Chapter 13550, *supra,* was reduced before the commencement of this action by $438.00 and within a month afterwards it was further reduced by $606.00, thus reducing the lien to about $270.00.

Those reductions were made under the authority of Chapter 14469, Acts of 1929, which provides that when they were made they should be noted upon the record of each of such assessments as a "credit thereon as of the date of the meeting of the City Commission held to act upon the

plans, specifications and estimates of the improvement for which said assessment was levied, and the payment of the amount of such reduction shall thereupon be assumed by the City of West Palm Beach, Florida."

·   The date to which the reduction applied was the date which under the provisions of Chapter 9945, *supra,* the defendant in error contends the lien attached.   ·

·   Assuming that when the contract of December 5, 1927, was made between the parties there was a controversy as to the then existence of a lien for paving and sewer construction, the defendant agreed thàt it should not be paid when the amount was assessed from the sum retained from the purchase price unless or until the sellers agreed to the payment or the question should be determined by the court. The defendant breached that agreement, which entitled the plaintiffs to recover in this action.

·   But the plaintiffs' were entitled to recover for another reason and that is the Act of 1927, Chapter 13550, which was in effect when' the contract for sale of land was made, and of course on the date when the defendant took title to the property, superseded Chapter 9945, *supra.*

·   Section 68 of the latter Act was amended in its entirety by Chapter 13550, *supra,* and provided that "Such assess'-ment shall be and constitute a lien against the land against which the same is made from the date of the entry in the said improvement lien book, provided for in the following paragraph hereof of the amount of the assessment against each lot, parcel or other tract of land, the general purpose for each assessment so made and such other information as may be deemed advisable by the said Commissioners." The Act also provides that such assessment shall bear interest from the date upon which said assessment became a lien upon the land.

The City of West Palm Beach so interpreted the statute because the assessment was not made and entered in the lien book until February, 1928, more than two months after the conveyance of the land to defendant and interest was computed by the city on that assessment only from the date of entry in the lien book.

There was no existing lien upon the property at the time of sale by the plaintiffs on account of either paving or sewer construction. The covenant against incumbrances was therefore not broken. At best the charges for paving and sewer cost would become a lien when the city should make the assessment. At the time of the sale it was not an existing lien. It could not have been lifted by the plaintiffs nor by the defendant because it was then not existent, but at best only potential, and it was against existing liens or encumbrances that the plaintiff warranted the title.

It is axiomatic that a lien cannot exist until the amount for which it is security is ascertained or capable of ascertainment. It is a charge upon property for the payment or discharge of a debt or duty. 17 R. C. L. 596; 37 C. J. 311.

A lien is merely a remedy for the debt. It cannot exist until the amount of the assessment is determined. 5 McQuillin Municipal Corp., Sec. 2258 (2nd Ed.).

The purchaser may have taken the property with notice of the city's power to tax it for improvements made upon the street and in the particular sewer district, but it was not against the city's power in this regard that the sellers warranted the title. It was only against existing encumbrances in form in this instance of an existing enforceable lien for paving and sewer construction then at the time of the sale resting upon the property that the sellers warranted the title.

In this view of the effect of the statutes authorizing and empowering the city to impose a charge upon real property for local public improvements, we think that the judgment was erroneous.

So the judgment is reversed.