998 So.2d 1149 (2008)
Carlos GREEN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D07-1020.
District Court of Appeal of Florida, Second District.
October 15, 2008.
Rehearing Denied December 31, 2008.
Carlos Green, pro se.
Bill McCollum, Attorney General, Tallahassee, and Sherry Anita Toothman, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Affirmed.
SILBERMAN and LaROSE, JJ., Concur.
ALTENBERND, J., Concurs with opinion.
ALTENBERND, Judge, Concurring.
I concur with reluctance in this case and only because Carlos Green, acting as his own attorney, has preserved no issue that would provide me with a legal basis to reverse the judgment on appeal. This case appears to permit the State of Florida to allow its prison guards to violate the civil rights of any prisoner with impunity so long as the judgment entered against the prison guards does not exceed the $50 per day "civil restitution lien" for "damages or losses" the State can obtain for the costs of incarceration pursuant to sections 960.291(1), (5)(b) and 960.293(2)(b), Florida Statutes (2005).[1] Indeed, the State seeks to avoid paying a present federal judgment for its employees' past violations of the civil rights of a prisoner by effectively offsetting a state judgment for "damages or losses" that includes an assessment for future days in prison that the prisoner may or may not actually serve.
In case number CRC98-11799CFANO in the Sixth Judicial Circuit, Mr. Green was convicted of manslaughter for an offense committed in 1998. Green v. State, 782 So.2d 416 (Fla.2d DCA 2001). Eventually, he was legally sentenced to fifteen years' incarceration as a prison releasee reoffender for this offense. Id.; see also Green v. State, 813 So.2d 184 (Fla. 2d DCA 2002).
Thereafter, while Mr. Green was in the custody of the Department of Corrections, two prison employees at the Santa Rosa Correctional Institution, J.K. Schwartz and P.J. Doremus, violated his constitutional rights. The details of that event are not described in our record, but we know that *1150 Mr. Green obtained a sizable judgment for both compensatory and punitive damages against the two employees in federal court in Pensacola. The Office of the Attorney General defended the employees in that civil rights lawsuit. The Eleventh Circuit affirmed the judgment on appeal in June 2005. See Green v. Schwartz, 138 Fed. Appx. 184 (11th Cir.2005) (unpublished opinion).
One month after losing its appeal of the civil rights case, the Office of the Attorney General, now representing "the State of Florida," filed a "motion for imposition of civil restitution lien judgment" against Mr. Green in his criminal case in the Sixth Judicial Circuit. This motion sought a civil restitution lien under sections 960.292(2) and 960.293(2)(b) for "liquidated damages" for the costs of incarceration for fifteen years in prison at the statutory rate of $50 per day. The motion thus sought $273,750 in "restitution" for 5475 days.
Mr. Green was initially represented by his civil rights lawyer but ultimately appeared pro se in this restitution proceeding. He claimed that the State could not obtain its liquidated damages for the costs of incarceration in 2005 under this statute because it had obtained restitution, "not to exceed $10,000," in 2002 under a separate statute at the time his sentence was imposed. He also claimed that this restitution was sought in retribution for his civil lawsuit. The trial court conducted a hearing, rejected these arguments, and entered judgment against Mr. Green for $250,800 with interest accruing from February 6, 2007.[2] The slight reduction in this judgment from the amount sought by the State is the result of time Mr. Green spent in county jail. He apparently did not even receive a day's credit for the day the employees violated his civil rights.
If my rough calculations are correct, Mr. Green had only spent about 2200 days in prison when he was ordered to provide restitution to the State for 5014 days. In other words, the court has required him to prepay the State for prison days that he may eventually serve in 2013.[3]
I have no issue with the policy that prisoners should be liable for the costs of their imprisonment if they can afford to pay for those costs. There is also no question that $50 is a reasonable estimate of those costs.[4] On the other hand, to impose "restitution" or "damages or losses" in favor of the State for services not yet provided takes this out of the arena of restitution or compensation and may confuse the concept of liquidated damages with that of penalty.
I am far more troubled, however, by the State's tactic of filing a motion in the criminal court to obtain a civil restitution lien essentially to serve as a setoff against the federal judgment for the violation of the prisoner's civil rights. It is rather obvious that the State is considering paying the judgment for its two employees *1151 and plans to deposit that payment into a prison account that will be immediately garnished by the State to satisfy the restitution judgment. It is debatable whether federal law permits this action, but at this point Mr. Green will need to raise that complaint with the district court entering the judgment. See Hankins v. Finnel, 964 F.2d 853 (8th Cir.1992) (holding that 42 U.S.C § 1983 preempts a state incarceration reimbursement act).
The federal government clearly intends the civil rights statutes to serve as a tool that prevents or at least deters unacceptable abuse of prisoners in state correctional facilities. If the states can create restitution judgments that protect their employees from such judgments, there does not seem to be an effective method short of criminal prosecution of prison guards to protect the basic human rights of prisoners. As a citizen of this state, I am troubled by the tactics of the Office of the Attorney General in its legal disputes with Mr. Green.
NOTES
[1] These provisions were enacted in 1994 and have not been amended since 1995, a few years before Mr. Green committed the offense for which he is incarcerated. See ch. 94-342, § 5; ch. 95-184, § 28, Laws of Fla. The statute cited is the one in effect the year the State filed its motion for imposition of a civil restitution lien, but it is not necessary to decide whether the applicable statute date is the date of the prisoner's offense or the date the State seeks the costs of incarceration.
[2] Ironically, if Mr. Green had committed first-degree murder, a capital offense, rather than manslaughter, his maximum restitution amount would have been set at $250,000. See § 960.293(2)(a).
[3] Obviously there was also no reduction to present value for the cost of these future expenses that the State may eventually incur, and the State is already accruing interest on the "liquidated damages" associated with the possible future expenses.
[4] As the Department explains on its website: "In Fiscal Year 2005-06, it cost $19,002 a year or $52.06 a day to feed, clothe, house, educate and provide medical services for an inmate at a major prison, which is only $894 more per year than it cost the previous fiscal year." Florida Department of Corrections, Frequently Asked Questions, http://www.dc. state.fl.us/oth/faq.html (last visited Sept. 22, 2008).