[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11915
Non-Argument Calendar
_____

D.C. Docket No. 3:10-cv-01187-HLA-JBT

MICHAEL E. RIGGINS,

Plaintiff-Counter Defendant-
Appellant,

versus

RICK BESELER, JR.,
Sheriff,

Defendant-Counter Claimant-
Appellee,

KEENON,
Lieutenant,
BAKER,
Sergeant,
PLUMMER,
Deputy,
JOHN DOE,
Dept., et al.,

Defendants-Appellees,

JANE DOE, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 12, 2014)

Before HULL, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Michael Riggins, a Florida prisoner, appeals *pro se* the summary judgment against his third amended complaint about the violation of his civil rights under the Eighth and Fourteenth Amendments by the Sheriff of Clay County, Florida, and four of his employees, *see* 42 U.S.C. § 1983, and the summary judgment in favor of the Sheriff's counterclaim for a lien to recover the costs of Riggins's incarceration, *see* Fla. Stat. § 960.293(2)(b). Riggins complained that Sheriff Rick Beseler Jr., approved policies that allowed his officers and a nurse at the Clay County Detention Center to use excessive force against Riggins. While awaiting trial, Riggins was housed in the medical confinement unit to monitor pain that he reported was radiating from his head down to his right arm. After Riggins refused to self-medicate, defied several orders from officers to "cuff up" for an examination, and became combative, the officers stunned Riggins with a taser gun

2

and restrained him for nurses to examine him.  The district court ruled that Beseler had official policies barring the use of excessive force against inmates; his officers' use of force was not excessive; and Beseler was entitled to a civil restitution lien of $12,050.  We affirm.

The district court did not err by entering summary judgment in favor of Beseler.  To hold Beseler liable as a supervisor, Riggins had to establish a causal relation between Beseler's official policies and the allegedly unlawful conduct of his employees.  *See West v. Tillman*, 496 F.3d 1321, 1328 (11th Cir. 2007).  Beseler submitted a copy of his official policies, which state that officers may not use physical force with inmates except "to effect lawful objectives . . . [and only] when necessary in self-defense, in defense of another, to overcome physical resistance to arrest, . . . or in response to a deliberate refusal to obey a lawful command"; officers may use a taser gun only to "obtain compliance by arrestees or inmates who deliberately refuse to obey a lawful command" and to counter their "active physical resistance" or "aggressive physical resistance"; medical staff must examine inmates for four hours after they are stunned with a taser gun; and an investigation must be conducted of every incident involving physical force.  Beseler also submitted a copy of a report establishing that he ordered an investigation of the incident between Riggins and the officers and that the officers

3

acted consistent with the official policies.  This evidence, without dispute, established that Beseler did not permit his officers to use excessive force.

The district court also did not err by entering summary judgment against Riggins's complaint that the officers used excessive force.  An officer may use force "in a good-faith effort to maintain or restore discipline." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009).  To make that determination, we consider the need for force; the relationship between that need and the amount of force used; the extent of the injury to the detainee; the extent of the threat to the safety of staff and inmates; and any efforts made to temper the severity of a forceful response.  *Id.*  The officers had a legitimate need to use force against Riggins when he was suffering from a potentially serious medical condition, and he refused to comply with several orders given by Sergeant Daniel Baker and Lieutenant Audrey Keenon to submit to an examination.  *See Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) ("Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.").

The amount of force employed by the officers was proportional to Riggins's aggressiveness and was used to restore order and to protect the officers and nursing staff.  *See id.* ("Decisions made at the scene of a disturbance to restore order are entitled to a degree of deference.").  Because Riggins was taller and significantly

outweighed the officers, they determined they had to stun Riggins to cuff him. When Riggins broke the taser leads and charged Baker, Deputy Roger Plummer acted defensively by shoving Riggins on his bed. After Riggins struck at Plummer, Baker used his taser gun in drive stun mode on Riggins's back to subdue him and to restrain him in a chair where nurses could safely examine him. When Riggins threatened to resist more examinations, the officers kept Riggins in the chair to prevent him from harming himself and to allow nurses to examine him at 15-minute intervals for the four-hour period required by the official policies. *See Williams v. Burton*, 943 F.2d 1572, 1575 (11th Cir. 1991) (concluding that the application of four-point restraints and gagging to quash an inmate's disturbance and to quell his attempts to incite other inmates did not "amount to the unnecessary and wanton infliction of pain forbidden by the Eighth Amendment" (internal quotation marks and citation omitted)). Other than Riggins's self-serving statement that he suffered scarring from the taser gun being used in stun drive mode, he failed to submit any evidence that his injuries were more than de minimis. *See Bennett*, 898 F.2d at 1533. The officers' use of force was not excessive.

The district court also did not err by entering summary judgment in favor of Nurse Jenny Glenn. Riggins does not dispute the findings that Glenn did not use force to examine him and that she fulfilled her duties to treat him and document

5

that treatment.  Riggins argues that Glenn should not have administered medical treatment because she already had "a Medical Refusal Form . . . signed by [her] and witnessed by two officers," but Riggins alleged in his third amended complaint that he signed the form after he was examined by Glenn.

Riggins moved for summary judgment on the ground that he had a right to refuse medical treatment, but the district court correctly refused to consider an argument that Riggins raised for the first time in his opposition to Beseler's motion for summary judgment.  *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  Moreover, Riggins admitted in his third amended complaint that he refused medical treatment only to the extent that it was administered by a nurse instead of a doctor.  *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) ("[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's . . . course of treatment [does not] support a claim of cruel and unusual punishment.").

The district court did not err by entering summary judgment in favor of Beseler's counterclaim for a lien to recover the costs of housing Riggins.  Under Florida law, "[u]pon conviction, a convicted offender is liable to the state and its local subdivisions for damages and losses for incarceration costs and other correctional costs," and a "local subdivision of" the state can petition for a civil

6

restitution lien to recover those costs. Fla. Stat. § 960.292(1), (2). If "the conviction is for an offense other than a capital or life felony, a liquidated damage amount of $50 per day of the convicted offender's sentence shall be assessed against the convicted offender and in favor of the state or its local subdivisions." *Id.* § 960.293(2)(b). Riggins was incarcerated at the Clay County Detention Center and later convicted of a burglary offense. The district court determined that Riggins owed the Sheriff's Office $12,050 for the 241 days he had been housed in the Clay County jail. Riggins argues that he cannot be charged for the days he was awaiting trial, but Section 960.293(2) does not limit costs to those incurred after conviction. Riggins's interpretation would undermine the stated "intent of the statute . . . [to] fully compensat[e] . . . the state[] and its local subdivisions for damages and losses incurred as a result of criminal conduct," *id.* § 960.29(3)(a). *See Ilkanic v. City of Fort Lauderdale*, 705 So. 2d 1371, 1372–73 (Fla. 1998).

We **AFFIRM** the summary judgment in favor of Beseler and his employees.