DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

FREDDY PALOMARES,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2023-1485

_____

July 16, 2025

Appeal from the Circuit Court for Hillsborough County; Barbara Twine Thomas, Judge.

Freddy Palomares, pro se.

Ricky D. Dixon, Secretary, Florida Department of Corrections, Tallahassee, and Kelly R. Forren, Assistant General Counsel, Florida Department of Corrections, Office of the General Counsel, Tallahassee, for Appellee.

ATKINSON, Judge.

Freddy Palomares appeals the trial court's civil restitution lien order entered against him and in favor of the Florida Department of Corrections (FDOC) for $198,000 for the costs of his incarceration pursuant to the Florida Civil Restitution Lien Act, §§ 960.29–.297, Fla. Stat. (2021) (the Act). We reject Mr. Palomares' arguments concerning

FDOC's ability to seek a civil restitution lien order and the procedure that FDOC used to do so. However, Mr. Palomares correctly argues that the trial court erroneously calculated FDOC's damages. As such, we reverse and remand for the trial court to recalculate FDOC's damages and enter a new civil restitution lien order.[1]

## Background

On May 21, 2021, Mr. Palomares was convicted pursuant to a guilty plea for violating the Florida Racketeer Influenced and Corrupt Organization (RICO) Act, trafficking in cocaine, and conspiracy to traffic in cocaine. The trial court sentenced Mr. Palomares to 132 months in state prison but credited his sentence with 1,635 days of time served. On October 26, 2022, FDOC filed a motion in Mr. Palomares' criminal case seeking a civil restitution lien order against Mr. Palomares' property in an amount representing the costs of his incarceration, which it calculated to be $198,000. The trial court entered a civil restitution lien order in FDOC's favor for that amount.

## Analysis

Resolution of this appeal requires the interpretation of several interrelated statutory provisions comprising the Act. As such, our review is de novo. *See State v. Crose*, 378 So. 3d 1217, 1224 (Fla. 2d DCA 2024) ("[T]his case turns on an interpretation of a statute, a legal determination that is reviewed de novo.").

The legislature enacted the Act to provide "a restitution remedy that is alternative and supplemental to existing statutory and common-law remedies that are available for restitution." § 960.295(1). " 'Civil restitution lien' means a lien which exists in favor of crime victims, the

---

[1] We reject Mr. Palomares' remaining arguments without further discussion.

2

state, its local subdivisions, or aggrieved party and which attaches against the real or personal property owned by a convicted offender." § 960.291(1). Though the definition of the civil restitution lien does not explain the nature of the underlying debt warranting the imposition of the lien, *see Lien*, American Heritage Dictionary (5th ed. 2016) (defining "lien" as a "claim upon a part of another's property that arises because of an unpaid debt related to that property and that operates as an encumbrance on the property until the debt is satisfied"), statutory context indicates that the debt is one for "damages and losses arising out of criminal acts, imposed against the real and personal property owned by the convicted offender who committed an offense that caused the damages and losses," § 960.29(1)(a); *see also* § 960.29(4) ("It is the legislative intent that the civil restitution liens authorized in this act assist crime victims to collect the amounts awarded and authorized as actual and liquidated damages and losses a crime victim incurs as a result of a convicted offender's conduct, and the state and its local subdivisions incur as a result of implementation of a convicted offender's sentence.").

Relevant to this appeal, the statutory definition of "damages and losses" includes "[d]amage or loss to the state and its local subdivisions which is caused by imposition of a convicted offender's sentence," which includes "the costs of incarceration and other correctional costs in connection with the implementation of a state court's sentence" and which "shall be determined by the court, as provided for in s. 960.293." § 960.291(5)(b)1. For the conviction of an offense that is not a capital or life felony, as in Mr. Palomares' case, section 960.293 provides that the costs of incarceration are "a liquidated damage amount of $50 per day of the convicted offender's sentence," which is "based upon the length of the

3

sentence imposed by the court at the time of sentencing." § 960.293(2)(b). A convicted offender incurs civil liability for the costs of his or her incarceration upon conviction. *See* § 960.292(1) ("Upon conviction, the convicted offender shall incur civil liability for damages and losses to . . . the state . . . as set forth in s. 960.293."); § 960.293(2) ("Upon conviction, a convicted offender is liable to the state and its local subdivisions for damages and losses for incarceration costs and other correctional costs.").

## I.

Mr. Palomares first argues that the State employed the wrong statutory procedure to recover the costs of his incarceration. The Act provides for two procedures. Section 960.292 provides that the "civil restitution lien shall be made enforceable by means of a civil restitution lien order" and that

> [u]pon motion by the state, upon petition of the local subdivision, crime victim, or aggrieved party, or on its own motion, the court in which the convicted offender is convicted shall enter civil restitution lien orders in favor of crime victims, the state, its local subdivisions, and other aggrieved parties. The court shall retain continuing jurisdiction over the convicted offender for the sole purpose of entering civil restitution lien orders for the duration of the sentence and up to 5 years from release from incarceration or supervision, whichever occurs later.

§ 960.292(2). The State may enforce a civil restitution lien order "in the same manner as a judgment in a civil action, including levy against personal property by the sheriffs of this state and foreclosure against nonexempt real property." § 960.294(2). Alternatively, section 960.297 provides that the "state and its local subdivisions, in a separate civil action or as counterclaim in any civil action, may seek recovery of the damages and losses set forth in s. 960.293." § 960.297(1). Mr.

4

Palomares argues that FDOC was required to file a separate civil action pursuant to section 960.297. FDOC argues—and the trial court agreed—that FDOC could file a motion for a civil restitution lien order in Mr. Palomares' criminal case pursuant to section 960.292(2), by which it sought to make its civil restitution lien for the costs of his incarceration enforceable.

Section 960.297(1) provides that the State "may" file a separate civil action to seek recovery of incarceration costs from a convicted offender, but nothing in the text of that provision indicates that is the sole means by which the State must do so in order to recover incarceration costs. *Cf., e.g., Agile Assurance Grp., Ltd. v. Palmer*, 147 So. 3d 1017, 1017–18 (Fla. 2d DCA 2014) (providing that "use of the word *may* deems relevant language permissive" but construing a forum selection clause as mandatory because the surrounding text—"may be instituted exclusively in the courts of Makati City"—indicated a mandatory requirement for where a legal action must be filed). While section 960.297 makes a separate civil action available to the State by use of the precatory term "may," a fair reading of the surrounding text of the Act as a whole indicates that the State may alternatively use the civil restitution lien—and thus the civil restitution lien order—as a means to recover its damages and that the civil restitution lien is a separate remedy from any judgment obtained in a civil action under section 960.297. *See Ham v. Portfolio Recovery Assocs.*, 308 So. 3d 942, 947 (Fla. 2020) ("[T]he goal of interpretation is to arrive at a 'fair reading' of the text by 'determining the application of [the] text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." (second alteration in original) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*

5

33 (2012))). Section 960.29 provides that the "Legislature intends" for "a civil restitution lien" to be "a legal mechanism" enabling "the state . . . to recover damages and losses arising out of criminal acts" and that the "Legislature intends" to "impose a long-term civil liability for the costs of incarceration, by means of the civil restitution lien." § 960.29(1)(a), (1)(d); *see also* § 960.295(2) ("A civil restitution lien order entered under this civil restitution lien act does not bar any subsequent civil remedy or recovery . . . ."); *Smith v. Fla. Dep't of Corr.*, 27 So. 3d 124, 126–27 (Fla. 1st DCA 2010) (providing that the State may file a motion for entry of a civil restitution lien order or "[a]lternatively . . . may seek recovery of the amounts provided for in section 960.23 'in a separate civil action' "); *Wilson v. State*, 957 So. 2d 683, 685 (Fla. 5th DCA 2007) (rejecting the defendant's "procedural argument" that the trial court "lacked authority to impose the costs of incarceration" in a civil restitution lien order).

Rather than specifying with particularity when or how the civil restitution lien arises, the statutory definition in the Act merely provides that the lien "exists" and "attaches against the real or personal property owned by a convicted offender." § 960.291(1). Mr. Palomares argues that because FDOC did not file a separate civil action under section 960.297(1)—which he characterizes as "the only mechanism available for the state to seek the imposition of the civil restitution lien"—"no 'civil restitution lien' existed for the entry of any 'civil restitution lien order.' " In other words, Mr. Palomares argues that the civil restitution lien cannot exist until the State first obtains a judgment in a separate civil action pursuant to section 960.297(1). However, despite an absence of statutory language explicitly pinpointing the time the lien begins to exist or the means by which the lien comes to exist, Mr. Palomares' argument must still be rejected.

Nothing in the Act requires the State to file a separate civil action, and nothing in section 960.297(1)'s text indicates that a separate civil action is a necessary predicate for a civil restitution lien to exist. To the contrary, the statutory definition of a civil restitution lien indicates that by operation of law it "exists" and "attaches" to the property owned by a "convicted offender," and that definition does not set forth any qualifications or conditions to the existence of the lien other than the fact that the defendant must have been convicted of a crime. *See* § 960.291(2) (" 'Convicted offender' means a defendant who has a conviction as defined herein entered against the defendant in the courts of this state."); § 960.291(3) (" 'Conviction' means a guilty verdict by a jury or judge, or a guilty or nolo contendere plea by a defendant, regardless of adjudication of guilt.").

Mr. Palomares misplaces reliance on an overreading of a single sentence in *Goad v. Florida Department of Corrections*, 845 So. 2d 880 (Fla. 2003), in which the supreme court described section 960.297 as "the mechanism for imposing the $50 per day reimbursement," seizing on the phrase "*the* mechanism" and arguing that that language indicates that the State must follow section 960.297 to recover incarceration costs. *See id.* at 885 (emphasis added). However, in *Goad* the FDOC recovered the defendant's costs of incarceration pursuant to section 960.297 by filing a counterclaim in a separate civil action that the defendant initiated. *Id.* at 881–82. In relevant part, the supreme court rejected the defendant's contention that sections 960.293 and 960.297 violated his substantive due process rights. *Id.* at 885. It relied on its prior decision finding that section 960.293 does not violate substantive due process rights and provided that "this reasoning applies equally to section 960.297, the mechanism for imposing the $50 per day reimbursement."

7

*See id.* at 885 (citing *Ilkanic v. City of Fort Lauderdale*, 705 So. 2d 1371, 1372–73 (Fla. 1998)).  In the context of that case, section 960.297 was "the mechanism" for recovering incarceration costs, but the opinion cannot be read to infer that the supreme court determined section 960.297 to be the *only* procedural mechanism, and the court did not discuss section 960.292 at all.

The Act presumes the existence of a lien against convicted offenders.  *See Case v. Texas Co.*, 156 So. 137, 141 (Fla. 1934) ("A lien is merely a remedy for the debt.").  From that, it can only reasonably be inferred that the text of the Act also presumes that the convicted offender has caused "damages or losses" to the lienor within the meaning of the Act, § 960.291(5), thereby justifying imposition of a lien against the convicted offender's property to secure the lienor's recovery of the damages or losses.  Under the circumstances of this case, Mr. Palomares incurred liability to the State for damages in the form of incarceration costs by operation of law from the moment he was convicted.  *See Smith*, 27 So. 3d at 126 ("An offender's liability for the costs of incarceration exists as a matter of law upon the offender's conviction." (citing §§ 960.292(1), .293(2), Fla. Stat. (2005))).  And given that the legislature liquidated those damages to a specific daily amount based upon the length of the sentence imposed at the time of sentencing, the amount of his liability only required a mathematical calculation.  *See* § 960.293(2)(b).  So, once Mr. Palomares was convicted and sentenced, the State could readily ascertain the amount of its damages for incarcerating Mr. Palomares, *see Case*, 156 So. at 141 ("[A] lien cannot exist until the amount for which it is security is ascertained or capable of ascertainment."), which therefore justified the "exist[ence]" of a civil restitution lien in its favor against Mr. Palomares' property as security for

his payment of that debt, *see* § 960.291(1).  That civil restitution lien could, in turn, "be made enforceable by means of a civil restitution lien order" upon "motion by the state."  § 960.292(2).  For the foregoing reasons, the trial court did not err by following the motion procedure in section 960.292(2) instead of requiring FDOC to commence a separate civil action under section 960.297(1).

## II.

Mr. Palomares also argues that section 960.292 does not allow nonparties like FDOC to file a motion for a civil restitution lien order.  He argues that the language in section 960.292(2) allowing "the state" to file a motion for a civil restitution lien order is limited to the "prosecuting authority representing the State of Florida," whereas FDOC argues that it qualifies as "the state" because it is the state agency responsible for incarcerating convicted offenders.

The Act does not define the word "state," but if FDOC is to be considered eligible to take advantage of the procedure set forth in section 960.292 to obtain a civil restitution lien order, it must necessarily qualify as the "state," as it cannot qualify as a "local subdivision," a "crime victim," or "aggrieved party."  *See* § 960.292(2); *see also* § 960.291(4), (6) (defining "[c]rime victim" and "[l]ocal subdivisions").  Though "aggrieved party" is an undefined term—and FDOC might ostensibly constitute an "aggrieved party" in the sense that it has incurred costs to incarcerate Mr. Palomares—the Act indicates that the "aggrieved party" is part of the broader definition of the "crime victim."  *See* § 960.291(4).

Read in isolation, the first part of the first sentence in section 960.292(2) could be perceived as supportive of Mr. Palomares' argument that the word "state" is limited to the prosecuting authority for the State of Florida.  The sentence prescribes different methods for obtaining a civil

9

restitution lien order, authorizing the State to file a "motion" while requiring local subdivisions, crime victims, and aggrieved parties to file a "petition." § 960.292(2). It could be reasonably inferred that only the State as the prosecuting authority may file a motion because only the prosecuting authority is a party to the criminal proceeding, whereas state agencies, local subdivisions, crime victims, and aggrieved parties are not. And because it is generally the parties to a lawsuit who request relief by filing a motion, the first portion of that sentence in section 960.292(2) could be perceived in isolation as referring to the State as a party and, consequently, as referring to the prosecuting authority and not nonparty state entities or agencies like FDOC.

However, courts cannot read portions of statutory provisions in isolation if they are to perform their duty to "determin[e] the objective meaning of the text." *Advisory Op. to Governor re Implementation of Amend. 4, the Voting Restoration Amend.*, 288 So. 3d 1070, 1078–79 (Fla. 2020) (explaining that words can carry different meanings when viewed in context); *see also Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) ("[J]udges must 'exhaust "all the textual and structural clues" ' that bear on the meaning of a disputed text." (quoting *Alachua County v. Watson*, 333 So. 3d 162, 169 (Fla. 2022))); *King v. King*, 82 So. 3d 1124, 1131 (Fla. 2d DCA 2012) ("It is axiomatic that all parts of a statute must be read *together* in order to achieve a consistent whole." (quoting *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992))). Even though a portion of the first sentence in section 960.292(2) could arguably refer to the State as a party, the latter half of that same sentence more naturally refers to the State as a government entity because it refers to the trial court entering civil restitution lien orders in favor of "the state" and "*its* local subdivisions," § 960.292(2)

10

(emphasis added); prosecuting authorities do not have local subdivisions as defined in the Act. Moreover, there are some circumstances under which nonparties have the right to file motions in pending cases, so the mere fact that section 960.292(2) authorizes "the state" to file a *motion* for a civil restitution lien order is not determinative of whether FDOC qualifies as the state. *See, e.g.*, Fla. R. Crim. P. 3.220(h) (authorizing the trial court to enter orders "on motion of a party, the deponent, or on its own motion, for good cause shown," to restrict depositions or enter protective orders).

The more natural reading of the Act as a whole is also supportive of FDOC's argument that the word "state" is not limited to the prosecuting authority for the State of Florida. When the other statutory provisions in the Act mention the "state," they nearly always do so in conjunction with "its local subdivisions." The Act's definition of "local subdivisions"—meaning "local subdivisions of the State of Florida which maintain correctional facilities, such as counties that maintain county correctional facilities or counties that provide funds directly or indirectly for the maintenance of correctional facilities within the county," § 960.291(6)—indicates that the Act is referring to the "state" and its "local subdivisions" as government entities that incarcerate people as opposed to prosecuting authorities. FDOC is a department within the executive branch of the state government responsible for incarcerating prisoners. *See generally* § 20.02(1), (2), Fla. Stat. (2021) (discussing the structure of the executive branch of government); § 20.315(1) (discussing the creation of FDOC "to protect the public through the incarceration and supervisions of offenders"). Thus, it is FDOC—on behalf of "the state"—that incurs the "damages and losses" (that is, the "incarceration costs") described in the Act. *See Fla. Dep't of Corr. v. O'Neal*, 398 So. 3d 1100,

11

1102 (Fla. 2d DCA 2024) ("Pursuant to its motion, the state, through the FDOC, was entitled to a civil restitution lien order in the amount provided by section 960.293."); *Acosta v. Dep't of Corr.*, 377 So. 3d 1230, 1231 (Fla. 2d DCA 2024) ("Here, while Mr. Acosta was still serving his sentence of incarceration, the State, through its Department of Corrections, moved under several provisions of chapter 960 for the imposition of a civil restitution lien order.").

The full context of the Act more reasonably supports the reading advanced by FDOC. *See Conage*, 346 So. 3d at 598; *Ham*, 308 So. 3d at 946–47; *Advisory Op. to Governor re Implementation of Amend. 4*, 288 So. 3d at 1078–79. The legislature created the Act with the express purpose of "assist[ing]" with the recovery of "damages and losses" that "the state and its local subdivisions incur as a result of implementation of a convicted offender's sentence." § 960.29(4). FDOC—not the prosecuting authority—is responsible for incarcerating prisoners and incurs the "damages and losses" described in the Act. The trial court did not err by allowing FDOC to pursue the entry of the civil restitution lien order on behalf of the State.

### III.

Mr. Palomares' argument that the trial court erred in its calculation of FDOC's damages has merit. The trial court sentenced Mr. Palomares to 132 months in the "Florida State Prison." Noting that the Act requires the liquidated damages to be calculated "based upon the length of the sentence imposed by the court at the time of sentencing," § 960.293(2)(b), FDOC and the trial court multiplied the $50 daily liquidated damages amount by the number of days within 132 months (approximately 3,960 days) for a total of $198,000.

12

But Mr. Palomares correctly points out that the trial court credited his sentence for 1,635 days' time served in the Hillsborough County jail.[2] So "at the time of sentencing," "the sentence imposed" upon Mr. Palomares was a sentence that comprised 1,635 days in the county jail and approximately 2,325 days in the state prison. *Id.* The trial court erred because it awarded FDOC—which only administers state prisons—damages for all 132 months, even though it was Hillsborough County—a "local subdivision" of the "state" that "maintain[s] [a] county correctional facilit[y]," § 960.291(6)—that incurred the costs for incarcerating Mr. Palomares for 1,635 of the days within those 132 months.

While section 960.293(2)(b) does not expressly contemplate a scenario where, as here, a convicted offender's sentence causes both the "state" and a "local subdivision" to incur incarceration costs for the same sentence, the Act supports the conclusion that FDOC cannot recover damages incurred by a local subdivision. First, the legislature's express purpose of the Act is to enable the state and its local subdivisions to recover damages they "*incur* as a result of implementation of a convicted offender's sentence," § 960.29(4) (emphasis added), and, logically, they can only incur such damages if a convicted offender is in fact incarcerated in their facility. *See Green v. State*, 998 So. 2d 1149, 1150 (Fla. 2d DCA 2008) (Altenbernd, J., concurring) (noting that the "slight

---

[2] The final judgment does not specify where Mr. Palomares spent the 1,635 days pending his sentence. But because only *convicted* felons serve time in the state prison, Mr. Palomares logically could not have spent those 1,635 days—prior to his conviction—in the state prison. *See Gwynn v. Orange Cnty. Bd. of Cnty. Comm'rs*, 527 So. 2d 866, 866 (Fla. 5th DCA 1988) ("[I]mprisonment in the state prison is statutorily provided . . . for felony convictions." (citing § 775.08(1), (2), Fla. Stat. (1987))). Moreover, FDOC does not challenge Mr. Palomares' assertion that he spent his 1,635 days' time served in the county jail.

reduction in this [civil restitution lien] judgment from the amount sought by the State is the result of time Mr. Green spent in county jail"). Additionally, the Act authorizes the trial court "to enter separate civil restitution lien orders *as appropriate* in favor of the crime victims, the state, its local subdivisions, or aggrieved parties," § 960.292(3) (emphasis added), which indicates that there are circumstances when a civil restitution lien order is appropriate and circumstances when it is not. In determining the appropriateness of the entry of the civil restitution lien order in this case, it is reasonable to look to the relevant circumstance of the location of a convicted offender's sentence of incarceration in either a state prison or county correctional facility. *See* § 960.293(2)(b) (providing that the liquidated damage amount "shall be assessed . . . in favor of the state *or* its local subdivisions" (emphasis added)). Allowing FDOC to recover the full extent of Mr. Palomares' incarceration costs, inclusive of those incurred by the county, not only constitutes a windfall for FDOC but deprives the county of its remedy under the Act. Should the county seek a civil restitution lien order against Mr. Palomares for the costs it incurred by incarcerating him while he awaited his sentence, *see Freeman v. State*, 165 So. 3d 695, 696 (Fla. 4th DCA 2015) (holding that "a convicted offender is liable for incarceration costs associated with time-served under section 960.293(2)(b)" (citing *Riggins v. Beseler*, 568 F. App'x 850, 854 (11th Cir. 2014))), the trial court would be correct to deny the county's requested relief because it already awarded those damages to FDOC, *see* § 960.295(2) (providing that "no duplicate recovery may be made in favor of crime victims, the state and its local subdivisions, and other aggrieved parties").

14

We reverse the trial court's civil restitution lien order, and we remand for the recalculation of FDOC's damages consistent with the foregoing and for the entry of a new civil restitution lien order.

Reversed and remanded with instructions.

LaROSE, J., Concurs.
ROTHSTEIN-YOUAKIM, J., Concurs specially with opinion.


ROTHSTEIN-YOUAKIM, Judge, Specially concurring.

Although I agree with the majority's ultimate conclusions and do not argue with the accuracy of its opinion, I disagree that resolution of this appeal requires such laborious reasoning. The plain language of the Florida Civil Restitution Lien Act allows the state to pursue a civil restitution lien order by motion in the underlying criminal proceeding. *See* § 960.292(2) ("[u]pon motion"). It also provides that the state "*may* seek recovery" by "separate civil action or as counterclaim in any civil action." *See* § 960.297(1) (emphasis added). Not only is the word "may" generally indicative of a permissive, rather than mandatory, course of action, *see Biden v. Texas*, 597 U.S. 785, 802 (2022) (explaining that "may" confers "the authority, but not the duty" (quoting *Lopez v. Davis*, 531 U.S. 230, 241 (2001))), but nowhere does the Act express or even imply that the state can obtain such an order by motion only if it first prevails in a separate civil action.

As to whether the undefined term "the state" is limited merely to the prosecuting state attorney's office, such an interpretation would be inconsistent with provisions in the Act indicating that "the state" also includes the FDOC, which is undisputedly a state agency. Most obviously, section 960.292 expressly permits other nonparties that have

15

been injured by the offender's conduct to seek such an order in that proceeding. *See* § 960.292(2) (authorizing "the court in which the convicted offender is convicted" to enter such orders "[u]pon motion by the state, *upon petition of the local subdivision, crime victim, or aggrieved party, or on its own motion*" (emphasis added)). And the damages and loss for which the "the state" is permitted to recover under the Act include its "costs of incarceration and other correctional costs," *see* §§ 960.291(5)(b)1, .293(2)—expenses that would, as the majority notes, typically be borne by the FDOC.

In short, I do not believe that the issues on appeal present close questions that require us to dig so deeply into our statutory construction toolbox. The plain language of the Act tells us all we need to know, and I am content to listen to what it's saying.

---

Opinion subject to revision prior to official publication.