Filed 11/10/21  P. v. Chavez CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ADRIAN CHAVEZ,<br><br>    Defendant and Appellant. | B308641<br><br>(Los Angeles County<br>Super. Ct. No. TA091961) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Conditionally affirmed as modified and remanded with directions.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

On March 17, 2008 a jury convicted Adrian Chavez of the first degree murder of Salvador DeAvila as an aider and abettor under the natural and probable consequences doctrine. The trial court sentenced Chavez to an aggregate term of 75 years to life and imposed a restitution fine, imposed and stayed a parole revocation restitution fine, and imposed a DNA penalty assessment and court security fee. The court also ordered victim restitution. In 2020 the superior court granted Chavez's petition for resentencing under Penal Code section 1170.95,[1] vacated his murder conviction, and sentenced him to six years in state prison for felony assault as a second-strike offender (§§ 667, subds. (b)-(i), 1170.12). The court reimposed the fines and fees and placed Chavez on parole for three years.

On appeal, Chavez contends the trial court erred in failing to apply his excess custody credits to offset the fines and fees. The People concede and we agree the trial court erred in failing to apply his excess custody credits to offset the restitution fine, parole revocation restitution fine, and DNA penalty assessment. However, because the court security fee is not a punishment, the excess custody credits cannot be used to offset that fee. Chavez also contends the restitution award must be reversed because it is based on his since-vacated murder conviction, or in the alternative, we should remand for the trial court to consider whether Chavez's assault conviction supports the restitution award. We agree with the latter contention and remand for the trial court to hold a restitution hearing at which the People will have the burden to prove by a preponderance of the evidence that the assault by Chavez was a substantial factor in causing the

---

[1] All further undesignated statutory references are to the Penal Code.

murder.  Finally, Chavez argues, the People concede, and we agree the trial court erred in placing him on three-years' parole because section 3000.01 mandates a maximum two-year parole term.

We modify Chavez's sentence to reflect a two-year parole term and satisfaction of the restitution fine, suspended parole revocation restitution fine, and DNA penalty assessment in full. We conditionally affirm the judgment as modified.  If the trial court determines at the restitution hearing that the assault conviction does not support the prior restitution award, the court should vacate the prior restitution award.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Evidence at Trial*[2]

On the night of June 24, 2007 DeAvila drove into the parking lot of Tam's Burgers in Paramount with Jose Maszano, Antonio Palomares, and Fausto Rojo.  DeAvila dropped the three men off at the parking lot and drove in to find a parking space. As Maszano, Palomares, and Rojo walked into the parking lot, Yashie Navarro drove up in a white BMW and almost hit Maszano.  Maszano, who was intoxicated, briefly argued with Navarro.  Maszano then leaned on the BMW's rear bumper and began talking on his cell phone.  Navarro told Maszano to "get the fuck off his car."  Maszano said "okay" and walked away.

Chavez then walked up to Maszano and told him, "This is Paramount Varrio, this is my Varrio.  Get the fuck out of here."

---

[2]    Our summary of the information and evidence is taken from our opinion in *People v. Chavez* (May 9, 2011), B216450 [nonpub. opn.].

Chavez identified himself as "Evil." Maszano responded, "[W]e ain't going nowhere." Chavez punched Maszano on the side of the chin and knocked him unconscious. Chavez then reached for Maszano's cell phone and went through Maszano's pockets.

Palomares tried to push Chavez away from Maszano. Another man approached Palomares and said something like, "[D]o you know who he is?" or "[D]on't be touching him" or "[D]on't be touching Evil." The man then hit Palomares in the nose, causing him to lose his contact lens. Palomares started to throw punches to defend himself.

DeAvila left his car and headed toward the fight to help his friends. Luis Jesus Rodriguez, later identified as a member of Chavez's gang, shot and killed DeAvila.

B.     *The Verdict and Sentence*

On March 17, 2008 a jury convicted Chavez of first degree murder (§ 187, subd. (a)) and found multiple firearm and gang enhancements to be true. Chavez admitted he suffered a prior serious or violent felony conviction under the three strikes law and served two prior separate prison terms within the meaning of section 667.5, subdivision (b). The trial court sentenced Chavez to an aggregate term of 75 years to life in prison.[3]

The court ordered Chavez to pay a $10,000 restitution fine (Pen. Code, § 1202.4, subd. (b)); it imposed and suspended a parole revocation restitution fine in the same amount (*id.,* § 1202.45); and it imposed a $20 court security fee (*id.,* § 1465.8, former subd. (a)(1)) and $20 DNA penalty assessment (Gov. Code,

---

[3]     The court struck the prior prison term enhancement allegations and imposed and stayed the 10-year gang enhancement.

4

§ 76104.7, subd. (a)).  The court also ordered Chavez to pay $7,499.09 in victim restitution, plus 10 percent interest, to the State Victim Compensation Board.  (Pen. Code, § 1202.4, subd. (f).)  We affirmed Chavez's conviction.  (*People v. Chavez* (May 9, 2011), B216450 [nonpub. opn.].)

C.    *Chavez's Resentencing and Section 1170.95 Petition*

In 2017, following the filing of a petition for writ of habeas corpus with the California Supreme Court, the trial court modified Chavez's conviction to reflect a conviction of second degree murder in light of the Supreme Court's holding in *People v. Chiu* (2014) 59 Cal.4th 155, 167.  The court resentenced Chavez to an aggregate term of 55 years to life and reimposed the fines and fees.  On January 23, 2019 Chavez filed a petition for resentencing pursuant to section 1170.95.  On August 26, 2020 the superior court granted Chavez's petition and vacated his murder conviction and the firearm enhancements.  In finding Chavez should be resentenced for the target offense of assault, the court explained, "There is no dispute in the evidence that an assault occurred.  Therefore, redesignating Petitioner's conviction to assault fits his culpability for punching Maszano, rendering him unconscious on the ground."  The court found the gang allegations to be true as to the assault conviction, and designated the target offense as felony assault based on the gang allegation under section 186.22, subdivision (d).  The court also noted Chavez previously admitted the prior strike conviction and two prior prison term allegations.

On September 17, 2020 the superior court resentenced Chavez to the upper term of three years for felony assault, doubled under the three strikes law.  The court again struck the prior prison term enhancement allegations.  The court awarded

5

Chavez 4,793 days of actual custody credit (sentencing him to time served) and placed Chavez on parole for three years. Chavez's counsel inquired as to whether the custody credits could be used to offset the previously imposed fines and fees. The court responded, "I don't see anything imposed in the minute order. I don't have the abstract of judgment, so I'm really not going to say anything about the fines and fees. It doesn't appear it was impose[d] by the judgment originally."[4]

## DISCUSSION

A.    *The Restitution Fine, Parole Revocation Fine, and DNA Penalty Assessment Should Have Been Offset by Chavez's Excess Custody Credits; No Offset Is Available for the Court Security Fee*

Chavez contends, the People concede, and we agree Chavez is entitled to have his excess custody credits applied as an offset to the $10,000 restitution fine, the $10,000 suspended parole revocation fine, and the $20 DNA penalty assessment. However, notwithstanding the People's concession, the custody credits offset does not apply to the $20 court security fee, which was not imposed as punishment.

When Chavez was convicted in 2007, section 2900.5, former subdivision (a), provided, "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including, but not limited to, any time spent in a jail, . . . prison, . . . or similar residential institution, all days of

---

[4]    Although the superior court indicated it intended to impose the same fines and fees previously imposed, the 2020 amended abstract does not reflect any fines or fees (or victim restitution).

custody of the defendant, including days . . . credited to the period of confinement pursuant to Section 4019, shall be credited upon his or her term of imprisonment, or credited to any fine on a proportional basis, including, but not limited to, base fines and restitution fines, which may be imposed, at the rate of not less than thirty dollars ($30) per day, or more, in the discretion of the court imposing the sentence." (Stats. 1998, ch. 338, § 6.) Section 2900.5, former subdivision (a), provided further, "In any case where the court has imposed both a prison or jail term of imprisonment and a fine, any days to be credited to the defendant shall first be applied to the term of imprisonment imposed, and thereafter the remaining days, if any, shall be applied to the fine on a proportional basis, including, but not limited to, base fines and restitution fines." (Stats. 1998, ch. 338, § 6.)

Pursuant to section 2900.5, former subdivision (a), where a defendant is resentenced under section 1170.95, any excess custody credits may be used to offset the restitution fines. (*People v. Lamoureux* (2020) 57 Cal.App.5th 136, 152 ["Under the plain terms of section 2900.5, as the statute existed at the time of the offense, the trial court was required to apply Lamoureux's excess custody credits to reduce her $560 restitution fine at a rate of no less than $30 per day of excess custody credit."]; see *People v. Souza* (2012) 54 Cal.4th 90, 143 [restitution fine must be based on law applicable at time of sentence under ex post facto clause]; *People v. Callejas* (2000) 85 Cal.App.4th 667, 678 [ex post facto clause applies to parole revocation restitution fine].)

The excess custody credits also may be used to offset the $20 DNA penalty assessment (Gov. Code, § 76104.7, former subd. (a)) because it is a punitive assessment. (See *People v.*

*Batman* (2008) 159 Cal.App.4th 587, 590 [the DNA penalty assessment "statute denominates the assessment a penalty"].)[5]

At the time Chavez was resentenced in 2020, the trial court found Chavez was entitled to 4,793 days of actual custody credit, and sentenced him to six years, which amounted to approximately 2,190 days (assuming 365-day years). This left Chavez with 2,603 days of excess credit. At $30 per day, Chavez had sufficient excess custody credits to offset $78,090 in fines, well in excess of the $10,000 restitution fine, the $10,000 parole revocation restitution fine, and the $20 DNA penalty assessment. Therefore, on remand the judgment should be modified to reflect that the restitution fine, parole revocation restitution fine, and DNA penalty assessment have been satisfied in full.

---

[5] Government Code section 76104.7, former subdivision (a), provided in 2007 that "there shall be levied an additional state-only penalty of one dollar ($1) for every ten dollars ($10), or part of ten dollars ($10), in each county upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses." Government Code section 76104.7 is intended to help "fund the operations of the Department of Justice forensic laboratories, including the operation of the DNA Fingerprint, Unsolved Crime and Innocence Protection Act." (*Id.,* § 76104.7, subd. (b); see *People v. Hamed* (2013) 221 Cal.App.4th 928, 933, fn. 2.) Chavez contends the DNA assessment was improperly imposed because under Government Code section 76104.7, former subdivision (a), it can only be imposed in addition to a "fine, penalty, or forfeiture," and the restitution fines and court security fee do not qualify. Because we agree the DNA penalty assessment can be offset by Chavez's excess custody credits, we do not reach this issue.

In contrast, however, the court security fee is not designed as a punishment, and therefore, the excess custody credits cannot offset these fees. As the Court of Appeal explained in *People v. Robinson* (2012) 209 Cal.App.4th 401, 406, in rejecting the defendant's argument that his excess custody credits should be used under section 2900.5, subdivision (a), to offset the court operations assessment (Pen. Code, §1465.8, subd. (a)(1)) and court facilities assessment (Gov. Code, § 70373, subd. (a)(1)), "'A fine is punitive.' [Citation.] The term 'fine' in section 2900.5, subdivision (a) includes 'state and county *penalty* assessments.' [Citation.] 'The root word [of penalty], "penal," means "of or relating to punishment or retribution." [Citation.] The American Heritage Dictionary defines "penalty" as "[a] punishment established by law or authority for a crime or offense."'" The court explained that the court operations assessment and court facilities assessments, unlike restitution fines, were not considered punitive, and therefore could not be offset with excess custody credits. (*Robinson*, at pp. 406-407.)

The $20 court security fee under section 1465.8, former subdivision (a)(1), is likewise a fee that was adopted as a budgetary measure, not for punitive purposes. (*People v. Alford* (2007) 42 Cal.4th 749, 758 ["The purpose of the court security fee was not to punish but to ensure adequate funding for court security."]; *People v. Wallace* (2004) 120 Cal.App.4th 867, 875 [same].) As the Supreme Court explained in *Alford*, "'The stated reason for enacting the $20 court security fee appears in section 1465.8, subdivision (a)(1), "To ensure and maintain adequate funding for court security . . . ." The maintenance of "adequate funding for court security" purposes is unambiguously a nonpunitive objective.'" (*Alford*, at p. 756; accord, *Wallace*, at p. 875.) Further, "the amount of the fee is not dependent on the

seriousness of the offense.  Thus, it does not meet the objectives of punishment and is distinguishable from a fine.  Indeed, the same fee is imposed in unlimited civil and probate cases." (*Alford*, at p. 759.)  Because the court security fee "shall be imposed on every conviction for a criminal offense" (§ 1465.8, former subd. (a)(1)), the superior court was required to impose this fee.

B.    *Remand Is Necessary for the Trial Court To Determine Whether Chavez's Assault of Maszano Supports a Victim Restitution Award*

Chavez contends the trial court erred in ordering him to pay $7,499.09 in victim restitution (plus 10 percent interest) to the State Victim Compensation Board because the award was based on his murder conviction, which no longer stands.  Chavez argues in the alternative that the superior court should hold a hearing at which the People must prove the assault was a substantial factor in causing the murder of DeAvila.  We agree as to the latter contention and remand for the superior court to hold a restitution hearing to determine whether to order victim restitution based on Chavez's assault conviction.

Section 1202.4, subdivision (f), provides with exceptions not applicable here, "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . .  The court shall order full restitution." (See Cal. Const., art. I, § 28, subd. (b)(13)(A) ["all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the

10

crimes causing the losses they suffer"]; *People v. Martinez* (2017) 2 Cal.5th 1093, 1098 ["'To the extent possible,' direct victim restitution is to be ordered in an amount 'sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct.'"]; *People v. Grandpierre* (2021) 66 Cal.App.5th 111, 115 ["The California Constitution requires courts to order restitution in every case in which a crime victim suffers a loss.  [Citation.] Statutory provisions implement this constitutional directive. Restitution is 'based on the amount of loss' the victim claims and should 'fully reimburse' the victim for every *economic loss* the defendant's criminal conduct caused."].)  Section 1202.4, subdivision (f)(2), provides that "[r]estitution ordered pursuant to this subdivision shall be ordered to be deposited in the Restitution Fund to the extent that the victim . . . has received assistance from the California Victim Compensation Board."

The People argue Chavez has forfeited his right to challenge the superior court's victim restitution order by failing to object to the restitution order at the time he was resentenced. (See *People v. Anderson* (2010) 50 Cal.4th 19, 26, fn. 6 ["Defendant has waived a claim of error as to the amount of restitution by failing to object on that ground in the trial court."]; *People v. Mays* (2017) 15 Cal.App.5th 1232, 1237 ["A defendant wishing to argue on appeal that there is no factual basis for a restitution order must object on that ground in the trial court to preserve the issue for appeal."].)

However, at the time Chavez was resentenced in 2020, it was not clear the superior court intended to reimpose the prior victim restitution order.  When Chavez's counsel raised a concern about the court's imposition of "mandatory fines and fees," the court responded, "Well I don't see anything imposed in the

11

minute order. I don't have the abstract of judgment, so I'm really not going to say anything about the fines and fees. It doesn't appear it was imposed by the judgment originally." Although Chavez did not at that time also object to an award of restitution, the superior court did not address or award restitution at the hearing, nor does the minute order or amended abstract of judgment address victim restitution.[6] Forfeiture principles therefore do not apply.

Chavez argues the victim restitution order should be vacated because he no longer has a conviction for murder, the basis for the initial restitution award. (See *People v. Lai* (2006) 138 Cal.App.4th 1227, 1246 ["section 1202.4 limits restitution to losses caused by the criminal conduct for which the defendant was convicted"]; *People v. Percelle* (2005) 126 Cal.App.4th 164, 180 ["in the nonprobation context, a restitution order is not authorized where the defendant's only relationship to the victim's loss is by way of a crime of which the defendant was acquitted"].)

However, Chavez acknowledges that to the extent his assault of Maszano caused the murder of DeAvila, he could be held responsible for victim restitution for economic losses from the murder. (See *People v. Trout-Lacy* (2019) 43 Cal.App.5th 369,

---

[6] Given that the amended abstract of judgment leaves blank the lines specified for imposition of fines and fees and victim restitution, arguably they were not imposed at the time of the 2020 resentencing (unlike in 2017 when fines, fees, and victim restitution were specifically reimposed). But the parties appear to agree that the court effectively imposed the same fines, fees, and victim restitution that were previously imposed. Further, the court must address restitution on remand, as required by the California Constitution (Cal. Const., art. I, § 28, subd. (b)(13)(A)) and section 1202.4, subdivision (f).

372 [in determining victim restitution, "[w]e apply tort principles of causation to determine whether a loss was a result of the defendant's conduct"]; *People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321 ["tort principles of causation apply to victim restitution claims in criminal cases"].)  As the Court of Appeal explained in *Trout-Lacy*, "'Legal causation in tort law has traditionally required two elements. . . .' [Citation.]  The first is cause in fact.  [Citation.]  "'An act is a cause in fact if it is a necessary antecedent of an event.'" [Citation.]' [Citation.]  '[T]he "but for" test governs questions of factual causation' except in cases involving concurrent independent causes, in which case the 'substantial factor' test applies.  [Citation.]  '[C]oncurrent independent causes . . . are multiple forces operating at the same time and independently, each of which would have been sufficient by itself to bring about the harm.'  [Citation.]  The second aspect of legal causation focuses on public policy considerations that limit an actor's responsibility for the consequences of his conduct."  (*Trout-Lacy*, at p. 372; accord, *Holmberg,* at pp. 1321-1322 [trial court did not abuse discretion in ordering defendant to pay restitution where defendant's receipt and concealment of stolen property on day it was taken in burglary was concurrent cause of victim's loss and substantial factor in causing loss to victim].)

The People contend Chavez's gang challenge ("This is Paramount Varrio, this is my Varrio") and his punching of Maszano and knocking him unconscious were the precipitating factors that caused Rodriguez to shoot and kill DeAvila. Certainly Chavez's actions led up to the shooting, but the violence escalated when another man issued a gang challenge to Palomares ("[D]on't be touching Evil") after Palomares tried to push Chavez away from Maszano, and then the man hit

13

Palomares, and Palomares threw punches in response.  Because there were multiple independent causes of the murder, the superior court will need to determine whether Chavez's conduct was a substantial factor in causing Rodriguez to shoot DeAvila.  (*People v. Trout-Lacy, supra*, 43 Cal.App.5th at p. 372; *People v. Holmberg, supra*, 195 Cal.App.4th at pp. 1321-1322.)  We remand for the superior court to hold a restitution hearing, at which the People will have the burden of proving Chavez's assault supports the victim restitution award.  (See *People v. Giordano* (2007) 42 Cal.4th 644, 664 ["The burden is on the party seeking restitution to provide an adequate factual basis for the claim."].)

> C. *The Trial Court Erred in Imposing Up to a Three-year Parole Term*

Chavez contends, the People concede, and we agree that the trial court erred in imposing up to a three-year parole term.  Effective January 1, 2019, section 1170.95, subdivision (g), provides that "[t]he judge may order the petitioner to be subject to parole supervision for up to three years following the completion of the sentence."  But section 3000.01, which became effective on August 6, 2020, clarifies that persons released from state prison on or after July 1, 2020 and "sentenced to a determinate term shall be released on parole for a period of two years."  (§ 3000.01, subds. (a), (b)(1).)

In *People v. Tan* (2021) 68 Cal.App.5th 1, the defendant was convicted of robbery and first degree murder, but after the superior court granted the defendant's petition for resentencing under 1170.95, the court vacated his murder conviction, resentenced him for robbery, and placed him on parole for three years.  The Court of Appeal reversed the three-year parole term as unauthorized, concluding section 3000.01 unambiguously

14

provides for a maximum parole term of two years (with limited exceptions not applicable here)[7] for any person who is sentenced to a determinate term and released from prison after July 1, 2020. (*Tan*, at pp. 5-6.) The Court of Appeal explained section 3000.01 did not conflict with section 1170.95 because it "was enacted after section 1170.95 and specifically states that it applies 'notwithstanding any other law . . . .' [Citations.] We presume that the Legislature, when drafting this language, knew that it had enacted section 1170.95 the year before and intended to maintain a consistent body of rules." (*Tan*, at p. 7.)

We find the reasoning in *People v. Tan, supra,* 68 Cal.App.5th at page 7, to be persuasive. Because Chavez was sentenced to a determinate term and released from state prison after July 1, 2020, the maximum period of parole the superior court could impose was two years. (§ 3000.01, subds. (a), (b)(1).) Accordingly, on remand the superior court must reduce Chavez's period of parole to a maximum of two years.

---

[7] Section 3000.01, subdivision (d) provides that the two-year parole term does not apply to "[a]n inmate currently incarcerated for an offense that will require the person to register as a sex offender" and "[i]nmates whose parole term at the time of the commission of the offense was less than the parole term prescribed in subdivision (b)."

15

## DISPOSTION

We modify Chavez's sentence to reflect a two-year parole term and satisfaction of the restitution fine, suspended parole revocation restitution fine, and DNA penalty assessment in full. We conditionally affirm the judgment as modified. We remand for the trial court to hold a restitution hearing to determine whether the People can meet their burden to show Chavez's assault of Maszano was a substantial factor in causing the murder of DeAvila. If the trial court determines at the restitution hearing that the assault conviction does not support the prior restitution award, the court should vacate the prior restitution award. Following the restitution hearing, the superior court is directed to prepare a corrected abstract of judgment reflecting all fines and fees imposed (and those that are satisfied) and any restitution award, and to forward it to the Department of Corrections and Rehabilitation.


FEUER, J.


We concur:


PERLUSS, P. J.


SEGAL, J.

16